IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| RICHARD FEINGOLD, individually and as a representative of a class of similarly-situated persons, ) ) ) ) | |
| Plaintiff, ) | CIVIL ACTION |
| v. ) | No. |
| ) | |
| JOHN HANCOCK LIFE INSURANCE COMPANY (USA) and JOHN HANCOCK LIFE & HEALTH INSURANCE COMPANY, ) ) ) ) ) ) | |
| Defendants. ) | |

**CLASS ACTION COMPLAINT**

Plaintiff, RICHARD FEINGOLD ("Plaintiff"), brings this action on behalf of himself and all other persons similarly situated, through his attorneys, and except as to those allegations pertaining to Plaintiff or his attorneys, which allegations are based upon personal knowledge, alleges the following upon information and belief against Defendants JOHN HANCOCK LIFE INSURANCE COMPANY (USA) and JOHN HANCOCK LIFE & HEALTH INSURANCE COMPANY ("Defendants").

**PRELIMINARY STATEMENT**

1. This case is a class action and arises from Defendants' pattern and practice of avoiding payment of life insurance policy death benefits that are owed to beneficiaries.

2. Defendants have access to several sources to determine when their policy holders have died. The Death Master File ("DMF") of the Social Security Administration ("SSA") is a publicly available database containing millions of death notices for individuals enrolled in the United States Social Security program since 1936. Insurance companies like Defendants can and

do routinely consult the DMF to determine whether or not particular policy holders have died. Defendants also subscribe to services or have direct access to court filings in multiple jurisdictions which would enable Defendants to ascertain when estates for policy holders have been opened. These are additional sources to determine when a policy holder has died.

3. However, Defendants have used the DMF and court access solely for their own advantage. Specifically, Defendants have consulted the DMF for their own benefit. For example, Defendants have accessed the DMF regarding clients with annuities to provide a basis for Defendants to stop making annuity payments, but Defendants have not equally used the DMF to the benefit of insureds or beneficiaries to determine when benefits are payable.

4. For determining when regular life insurance policy benefits are payable, Defendants have all but ignored the DMF and court filings.

5. Defendants disregarded the DMF and court access for purposes of determining when to make life insurance benefit payments to beneficiaries despite touting – and contracting – that beneficiaries would receive payment upon the death of the insured.

6. This practice enables Defendants to collect and enjoy interest on unclaimed benefits, charge against policy benefits, and otherwise benefit from holding unclaimed benefits.

7. As a result of this industry wide practice life insurance companies, including Defendants, have been and are the subject of numerous investigations by State regulators.

8. Defendants' pattern and practice of handling unclaimed property in such a manner as to not pay benefits and/or not timely escheat the unclaimed property to a State has affected thousands of policy holders and beneficiaries in each of the states in which Defendants market life insurance policies.

9. As a result of an investigation and audit into Defendants' pattern and practice of handling unclaimed property by approximately 30 States and the District of Columbia, and without admitting liability, Defendants entered into a Global Resolution Agreement in approximately June 2011, to alter their handling of unclaimed property. A true and correct copy of the Global Resolution Agreement is attached hereto as Exhibit A.

10. Further as a result of those investigations, Defendants have settled with several States individually, including Florida and California, to create new policies for handling unclaimed property and for the payment of fines for failing to adhere to unclaimed property laws.

11. Entering into the Global Resolution Agreement and settlements with individual States does not shield Defendants from liability for damages owed to Plaintiff and the Class who were not parties or signatories to the agreement or settlements and did not receive compensation from the Global Resolution Settlement.

12. Defendants' pattern and practice of handling unclaimed property has directly resulted in damages to Plaintiff and the Class and the damages are ongoing.

## JURISDICTION AND VENUE

13. This Court has subject matter jurisdiction under 28 U.S.C. § 1332(a) and (d). On information and belief the Class claim that is asserted is $5,000,000 or more, and Plaintiff and members of the Class are residents of different States than Defendants.

14. Venue in this district is proper under 28 U.S.C. § 1391. Defendants' principal place of business is in Massachusetts, Defendants conduct substantial business in this District, Defendants' corporate control group is located in this District, Defendants make their strategic business decisions in this District, and a substantial part of the actions and omissions giving rise to the action occurred in this District.

## PARTIES

15. Plaintiff is an individual that resides in Lake County, Illinois. Plaintiff is the beneficiary of a life insurance policy marketed and sold by Defendants to Plaintiff's mother.

16. John Hancock insurance products are issued by JOHN HANCOCK LIFE INSURANCE COMPANY (USA) and JOHN HANCOCK LIFE & HEALTH INSURANCE COMPANY. Included in the many John Hancock insurance products sold are life insurance policies.

17. JOHN HANCOCK LIFE INSURANCE COMPANY (USA) is a Michigan corporation with its principal place of business in Boston, Massachusetts. Defendant entered into a Global Resolution Agreement regarding its unclaimed property practices on or about June 2011.

18. JOHN HANCOCK LIFE & HEALTH INSURANCE COMPANY is a Delaware corporation with its principal place of business in Boston, Massachusetts. Defendant entered into a Global Resolution Agreement regarding its unclaimed property practices on or about June 2011.

## FACTS

19. In approximately 1945, Plaintiff's mother, Mollie Feingold, purchased a life insurance policy from Defendants.

20. On or about December 19, 2006, Plaintiff's mother passed away. Plaintiff was unaware of the life insurance policy his mother had purchased in 1945. The policy was likely lost or misplaced by Plaintiff's mother over the years.

21. Plaintiff first became aware the Defendants owed money to Plaintiff's mother approximately four years after her death in late 2010 from the Illinois Treasurer's unclaimed

funds website "CashDash". Plaintiff investigated the unclaimed funds with the State of Illinois and was informed that $459 was the full payment of money remitted from dividends and there was no money escheated from any life insurance policy.

22. The investigation with the State of Illinois took some time, during which Plaintiff was always informed that the $459 was the full amount owed from Defendants and that money was only for "dividends." Following several procedural steps, including obtaining necessary documentation, Plaintiff finally received the $459 from the State in December of 2011.

23. Beginning in January 2012, Plaintiff contacted Defendants and requested a copy of any insurance policy and sought information regarding the unclaimed funds arising from dividends and including whether there were any life insurance proceeds. Plaintiff was initially told there was no life insurance policy purchased by his mother. Shortly thereafter Defendants found the policy Plaintiff's mother purchased and Defendants sent Plaintiff forms to be filled out while still refusing to provide any other information.

24. After providing all requested information and documents Plaintiff again requested a copy of the life insurance policy his mother purchased but Defendants again still refused.

25. Through May of 2012, Plaintiff remade the request for a copy of the policy, including making written requests to Defendants in Massachusetts, to no avail.

26. Without providing a copy of the policy on June 1, 2012, Defendants sent Plaintiff a check for $1,349.71 without explanation as to why this money was not escheated to the State of Illinois when the dividend monies were escheated or explaining with any degree of certainty what the check was for.

27. Plaintiff never received a copy of the insurance policy, never received an explanation or accounting for the amount paid to him of $1,349.71, never received an

explanation of why the $459 was escheated to the State but the $1,349.71 was not, and never received an explanation of why the information forming the basis to stop making dividend payments was not shared to effect the life insurance policy benefits.

**Massachusetts Law**

28. Massachusetts' substantive laws will be constitutionally applied to the claims of Plaintiff and the Class Members under the Due Process Clause, 14th Amend, § 1, and the Full Faith and Credit Clause, art. IV., § 1, of the U.S. Constitution.

29. Defendants' headquarters and principal places of business are located in Massachusetts. Massachusetts has a paramount interest in regulating Defendants' conduct, and Defendants' decisions to locate their principal places of business in Massachusetts and avail themselves of Massachusetts courts and laws render the application of Massachusetts law to the claims at hand constitutionally permissible.

30. Massachusetts is the place where decisions regarding the conduct complained of in this Complaint were made, and Massachusetts is the place where most of the injury occurred.

31. Similarly, Massachusetts is the place where the policies of Defendants were set which gave rise to the misconduct alleged herein and the conduct causing the injury occurred in Massachusetts.

32. Further, Massachusetts law is appropriately applied to the putative Class here because Massachusetts is the place where the putative Class was to communicate with Defendants regarding the unclaimed property at issue.

## CLASS ACTION ALLEGATIONS

33.     *Class Definition.* Plaintiff brings this action individually and on behalf of the following class of similarly situated persons (the "Class"), including subclass, of which Plaintiff is a member:

> (b)(2) Injunctive Relief Class:
>
> All persons who are owners or beneficiaries to the proceeds of death benefits, policies, contract or accounts of John Hancock which have gone unclaimed.
>
> (b)(3) State Sub-Class:
>
> All persons who are owners or beneficiaries to the proceeds of death benefits, policies, contract or accounts of John Hancock which have gone unclaimed.
>
> [Alternative] (b)(3) Specific State Sub-Class:
>
> All persons in Massachusetts and Illinois, who are owners or beneficiaries to the proceeds of death benefits, policies, contract or accounts of John Hancock which have gone unclaimed.

Excluded from the Class(es) are Defendants and any of their officers, directors or employees, the presiding judge, and any member of their immediate families. Plaintiff hereby reserves the right to amend the above class definition based on discovery and the proofs at trial.

34.     *Numerosity.* The members of the Class are so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to Plaintiffs at this time and can only be ascertained through appropriate discovery, Plaintiffs believe that there are at least thousands of persons in the Class.

35.     *Commonality.* There are questions of law or fact common to the Class including, *inter alia*, the following:

>    a.     Whether Defendants violated Massachusetts, Illinois or other various state laws by failing to timely return customers' monies that were unredeemed;

b.  Whether Defendants were unjustly enriched by failing to timely return unclaimed property and/or generating income for themselves on those unredeemed funds and/or charging a fee for holding funds while generating monies off of the funds and/or not sharing those monies generated with the rightful owner of those funds;

c.  Whether by failing to timely return unclaimed property amounts to conversion of Plaintiff's and the Class' money for Defendants' own benefit;

d.  Whether Plaintiff and Class have been damaged by Defendants' conduct and, if so, what is the proper measure of such damages;

e.  Whether Defendants breached a fiduciary duty owed Plaintiff and the Class by failing to notify them in a timely manner using the best practicable notice that their funds had gone unclaimed and they were in fact owed money. Whether Defendants further breached their fiduciary duties owed to Plaintiff and the Class by failing to timely return unclaimed property and/or generating income for themselves on those unredeemed funds and/or charging a fee for holding funds while generating monies off of the funds and/or not sharing those monies generated with the rightful owner of those funds.

36. *Typicality.* The claims or defenses of Plaintiff are typical of the claims of the Class, alleged herein. Plaintiff, the same as every class member, was the rightful owner of unclaimed property, those funds went unredeemed and Defendants failed to inform Plaintiff of the unredeemed funds, generated monies through the use of those funds which Defendants did not share with Plaintiff, and charged an administrative charge before returning the unredeemed transfer several years later even though Defendants generated interest and profit as a result of this practice.

37. *Adequacy.* Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff has retained undersigned counsels who are competent and experienced in the prosecution of complex class action litigation. The interests of the Plaintiff are aligned with, and not antagonistic to, those of the Class.

38. *Fed. R. Civ. P. 23(b)(2) Requirements.* The prerequisites to maintaining a class action for injunctive and equitable relief pursuant to Fed. R. Civ. P. 23(b)(2) exist as Defendants

acted or refused to act on grounds generally applicable to the Class thereby making appropriate final injunctive and equitable relief with respect to the Class as a whole.

39. The prosecution of separate actions by members of the Class would create a risk of establishing incompatible standards of conduct for Defendants. For example, one court might decide that the challenged actions are illegal and enjoin them, while another court might decide that those same actions are not unlawful. Individual actions may, as a practical matter, be dispositive of the interest of the Class, who would not be parties to those actions.

40. Defendants' actions are generally applicable to the Class as a whole, and Plaintiff seeks, *inter alia*, equitable remedies with respect to the Class as a whole.

41. Defendants' alleged uniform scheme and common course of conduct make declaratory relief with respect to the Class as a whole appropriate.

42. *Fed. R. Civ. P. 23(b)(3) Requirements.* This case satisfies the prerequisites of Fed. R. Civ. P. 23(b)(3). The common questions of law and fact enumerated above predominate over questions affecting only individual members of the Class, and a class action is the superior method for fair and efficient adjudication of the controversy.

43. The likelihood that individual members of the Class will prosecute separate actions is remote due to the extensive time and considerable expense necessary to conduct such litigation, especially in view of the relatively modest amount of monetary, injunctive and equitable relief at issue for each individual Class member.

44. This action will be prosecuted in a fashion to ensure the Court's able management of this case as a class action on behalf of the Class.

## COUNT I
### (Violation of Massachusetts Consumer Protection Act; Alternatively, Violation of Various State Consumer Protection Laws)

45. Plaintiff repeats and realleges the allegations of the foregoing paragraphs as if fully set forth herein.

46. At all times hereto, there was in full force and effect the Massachusetts Regulation of Business Practices for Consumer Protection, Chapter 93A, *et seq.* ("the Massachusetts Act").

47. Plaintiff and other Class members are owners or beneficiaries to the proceeds of policies, contracts or accounts of John Hancock which have gone unclaimed, are consumers within the meaning of the Massachusetts Act given that Defendants' business activities involve trade or commerce, are addressed to the market generally and otherwise implicate consumer protection concerns.

48. The Massachusetts Act renders unlawful the use or employment of any deception [including the] concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact ... in the conduct of any trade or commerce.

49. Defendants intended that the Plaintiff and the class would rely on the deception of Defendants' policies regarding unclaimed property including but not limited to:

   (a) that should money go unclaimed Defendants would neither notify the owner or beneficiary nor return the money in a timely fashion;

   (b) that Defendants would use funds from unclaimed property to generate income that Defendants would keep for themselves;

   (d) that Defendants would deduct administrative charges for holding onto unclaimed property without making an effort to return that property.

This conduct constitutes consumer fraud within the meaning of the Massachusetts Act.

50. If Defendants had disclosed the above facts to Plaintiff and the Class, they could have (and would have) prevented economic injury by collecting all such unclaimed funds, rather than having them remain in Defendants' coffers.

51. Defendants' conduct alleged herein is furthermore unfair insofar as it offends public policy; is so oppressive that the consumer has little alternative but to submit; and causes consumers substantial injury.

52. Defendants knew or should have known that passively holding unclaimed property was unfair to the owners of that unclaimed property.

53. The omission of a material fact, such as that alleged here, impacts the public as actual or potential consumers of Defendants' services. As a direct and proximate result of the above-described breach, Plaintiff and the Class have been damaged in an amount to be proven at trial.

## COUNT II
### (Unjust Enrichment)

54. Plaintiff repeats and realleges the allegations of the foregoing paragraphs as if fully set forth herein.

55. Defendants have been unjustly enriched by enjoying the benefits of Plaintiff's and the Class' monies obtained from unclaimed property, including using those funds to generate income for themselves. Defendants were further unjustly enriched by reducing Plaintiff's and Class members' property by imposing an administrative charge on those unclaimed funds.

56. Under the circumstances, it is inequitable for Defendants to retain any of these benefits, at the expense and to the detriment of Plaintiff and Class.

57. Such conduct sounds in equity under the common law of unjust enrichment, or money had and received, and constructive trust.

58. Plaintiff and the Class have no adequate remedy at law.

59. As a direct and proximate result of the above, Plaintiff and the Class have been damaged in an amount to be proven at trial.

## COUNT III
### (Conversion)

60. Plaintiff repeats and realleges the allegations of the foregoing paragraphs as if fully set forth herein.

61. Defendants accepted the original purchase of the policies, contracts or accounts knowing full well those policies, contracts or accounts would one day, on a date certain, become payable to persons such as Plaintiff and the Class.

62. Equally to Plaintiff and the Class, on the dates certain when those policies, contract or accounts were to pay out, or after a reasonable time of when those policies, contracts or accounts were to pay out, Defendants exercised dominion and control over those pay outs directly and indirectly through their policy of unclaimed property.

63. Defendants could have promptly notified Plaintiff and Class of the existence of unclaimed property, or could have promptly taken other reasonable steps to turn over the unclaimed property. Instead, and as a benefit of its own policy regarding unclaimed property, Defendants enjoyed the use of the unclaimed funds as if they were their own.

64. Defendants' dominion and control over the unclaimed property amounted to conduct which improperly deprived Plaintiff and Class of the rightful access to and use of their money, and constitutes an unlawful conversion of Plaintiff's and Class's monies.

65. As a direct and proximate result of the above, Plaintiff and the Class have been damaged in an amount to be proven at trial.

## COUNT IV
### (Breach of Fiduciary Duty)

66. Plaintiff repeats and realleges the allegations of the foregoing paragraphs as if fully set forth herein.

67. Defendants, by virtue of the policies, contracts or accounts entered into an arrangement whereby for a fee, Defendants were obligated to make pay outs on those policies, contracts or accounts to Plaintiff and the Class. Defendants are fiduciaries to the Plaintiff and the Class based on their relationship with Plaintiff and the Class. Defendants are fiduciaries by reason of their holding of death benefits (funds) for their policy holders' beneficiaries, heirs, executors and estates. Defendants are fiduciaries by reason of their holding unclaimed property. Defendants are fiduciaries by reason of their exercising the right to control claims within the insureds' policies (such as when or if claims are even made). Defendants are fiduciaries by reason of the trust and confidence placed in Defendants (and Defendants' knowledge of the placing of that trust and confidence) for Defendants' holding of proceeds due pursuant to death benefits, policies, contracts or accounts. By and through operation of this relationship, Defendants acted as a fiduciary to Plaintiff and the Class.

68. Defendants breached one or more of those fiduciary duties by, including but not limited to: holding onto death benefits (funds) and/or unclaimed property, failing to notify Plaintiff and the Class Defendant were so holding death benefits (funds) and/or unclaimed property, using the death benefits (funds) and/or unclaimed property for their own benefit, earning and retaining interest on the death benefits (funds) and/or unclaimed property, and charging administrative fees to hold on to the death benefits (funds) and/or unclaimed property without undertaking reasonable efforts to locate the Plaintiff and the Class so that they may

receive the death benefits (funds) and/or unclaimed property eliminating the need for the ongoing administrative fees.

69. Defendants did not make the payouts to Plaintiff and the Class, which fact Defendants did not disclose. Plaintiff and the Class were not made aware that their rights pursuant to the policies, contracts or accounts had been triggered.

70. Defendants had the means to take reasonable steps to notify Plaintiff and the Class of the proceeds owed them on policies, contracts or accounts. Defendants breached their fiduciary duty to Plaintiff and the Class by failing to notify them of the proceeds owed, among other breaches.

71. As a proximate result of Defendants' actions, Plaintiff and Class have suffered damages in the form of (i) lost income and/or lost interest or other use of the unclaimed funds; and (ii) the charging of administrative fees when the fiduciary benefitted from possession of the funds.

72. Defendants' breach of fiduciary duty was a direct cause of the Plaintiff's and the Class' damages. Had Defendants made reasonable and timely efforts to provide notice of the unclaimed property to Plaintiffs and the Class, they would not have lost out on generating income and profits on the funds themselves, and would not have lost the portion of the principal that Defendants deducted as an administrative charge.

73. Instead, Defendants waited to notify Plaintiff and the Class, if at all. During this substantial time, Plaintiff and Class were without their money and Defendants had in fact been using the money for their own benefit to generate income for themselves. Defendants' conduct improperly deprived Plaintiff and the Class of the rightful access to and use of their money.

74. As a direct and proximate result of the above, Plaintiff and the Class have been damaged in an amount to be proven at trial.

## COUNT V
### (Declaratory Relief Pursuant to 28 U.S.C. § 2201)

75. Plaintiff repeats and realleges the allegations of the foregoing paragraphs as if fully set forth herein.

76. There is an actual controversy between Defendant and Plaintiff and the Class concerning whether Defendants should be permitted to hold on to unclaimed property without notification to Plaintiff and the Class within a reasonable time.

77. Defendants engaged in, and continues to engage in inequitable, unfair and fraudulent conduct concerning their practice of holding unclaimed property without notifying the owner of those funds within a reasonable period of time after Defendants knew or should have known pay outs were due pursuant to the underlying policies, contracts or accounts, all the while keeping the income and interest by use of the unclaimed property, and unfairly imposing an administrative charge that is deducted directly from the funds before they are refunded to Plaintiff and the Class.

78. Defendants, on the other hand, believe they have complied with all obligations and duties arising from their legal relationship with Plaintiff and the Class as documented in the Global Resolution Agreement Defendants entered into with several states.

79. These opposing views create adverse legal interests over an actual controversy of to whom the money belongs, including those funds earned historically off the unclaimed property, and fees charged historically to hold on to the unclaimed property. A declaratory

judgment is proper to declare the rights of the Plaintiffs, Class and Defendants in this controversy.

80. The foregoing facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

81. Pursuant to 28 U.S.C. § 2201 this Court may "declare the rights and legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." These declarations are being sought under the law supporting the causes of action set forth above.

82. Defendants are wrongfully holding on to money rightfully owned by the Class, without notifying the Class it is holding the money, or offering to return the money, all the while using those funds for its own benefit. By granting declaratory relief, the Court would avoid multiplicity and inconsistency of actions by declaring in one action the rights and obligations of the litigants.

83. Accordingly, Plaintiff and the Class seek the following declarations:

(a) **Declaration I:** That Defendants be prohibited from holding onto funds owned by the Class.

(b) **Declaration II:** That the Class be declared the true owner of the monies generated from use of the unclaimed funds and of the fees charged to hold onto the unclaimed funds.

(c) **Declaration III:** That Defendants be required to disgorge all of the unclaimed property funds in their possession to the true owners within thirty days of a final judgment, plus pre-judgment interest.

(d) **Declaration IV.** That Defendants be required, within thirty days of a final judgment, to return to Class members funds that they have escheated to any state or jurisdiction within the United States.

(e) **Declaration V.** That Defendants, on a going forward basis, be required to use address updating and person locating, web based lists and all other reasonably available systems to ensure accurate notifications of unclaimed property.

(f) **Declaration VI:** That Defendants' practice of retaining possession of all unclaimed property breaches its fiduciary duty and creates a constructive trust for the benefit of the Class.

(g) **Declaration VII:** That Defendants be required to disgorge any fees it has charged class members for possessing, notification, refund, or escheat of unclaimed property.

(h) **Declaration VIII:** That Defendants be required to disgorge all income it has earned from unclaimed property funds.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff, RICHARD FEINGOLD, individually and on behalf of all others similarly situated, demands judgment in his favor and against Defendants, JOHN HANCOCK LIFE INSURANCE COMPANY (USA) and JOHN HANCOCK LIFE & HEALTH IINSURANCE COMPANY, jointly and severally, as follows:

A. Declare this action to be a proper class action pursuant to Fed. R. Civ. P. 23, appoint Plaintiff as the Class representative, and appoint Plaintiff's counsel as counsel for the Class;

B.  Award Plaintiff and the members of the Class payments of benefits owed and payments of interest and fees owed for the period that the benefits were withheld;

C.  Award Plaintiff reasonable costs, including attorney's fees; and

D.  Award such equitable/ injunctive or other relief that the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

RICHARD FEINGOLD, individually and as the representative of a class of similarly-situated persons

By: /s/Alan L. Cantor
    One of Plaintiff's Attorneys

Alan L. Cantor
Swartz & Swartz, P.C.
10 Marshall Street
Boston, MA  02108
Telephone:  617-742-1900
Fax:  617-367-7193

Brian J. Wanca
ANDERSON + WANCA
3701 Algonquin Road, Suite 760
Rolling Meadows, IL  60008
Telephone:  847-368-1500
Fax:  847-368-1501