IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

Case No.:  1:13-CV-10185

| | |
|---|---|
| RICHARD FEINGOLD, Individually and as Representative of a Class of Similarly-Situated Persons, | ) ) ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) |
| JOHN HANCOCK LIFE INSURANCE COMPANY (USA) and JOHN HANCOCK LIFE & HEALTH INSURANCE COMPANY, | ) ) ) |
| | ) |
| Defendants. | ) |

---

## DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS THE COMPLAINT

---

# TABLE OF CONTENTS

**PAGE**

PRELIMINARY STATEMENT ........................................................................1

BACKGROUND ...........................................................................................2

STANDARD OF REVIEW AND APPLICABLE LAW ...................................7

ARGUMENT................................................................................................9

    I.       Plaintiff's Ch. 93A Claim Should Be Dismissed.........................9

    II.      The Complaint's Common Law Counts Should Be Dismissed.................11

          A.      Plaintiff's Unjust Enrichment Claim Should Be Dismissed in Light of Adequate Legal Remedies and for Failure to Plead Either an "Impoverishment" or that John Hancock's Actions Lacked Justification.........................................................11

          B.      Plaintiff's Conversion Claim Fails as a Demand for a Conditional and General Debt ........................................................13

          C.      Plaintiff's Claim for Breach of Fiduciary Duty Fails Because John Hancock Owes No Fiduciary Duty and Plaintiff Does Not Allege a Breach of Any Purported Duty .........15

          D.      The Court Should Exercise Its Discretion to Decline to Entertain Plaintiff's Declaratory Judgment Count.........................16

CONCLUSION.............................................................................................18

## <u>TABLE OF AUTHORITIES</u>

<small>CASES</small>

*Artuso v. Vertex Pharm., Inc.*, 637 F.3d 1 (1st Cir. 2011) ...................................................8

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ...........................................................................7

*Bd. of Mgrs. of Hidden Lake Townhome Owners Assoc. v. Green Trails Improvement Assoc.*, 934 N.E.2d 636 (Ill. App. Ct. 2010)..........................................12

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ...............................................................7

*Bierig v. Everett Square Plaza Assocs.*, 611 N.E.2d 720 (Mass. App. Ct. 1993)..............11

*Bill Marek's The Competitive Edge, Inc. v. Mickelson Grp., Inc.*, 806 N.E.2d 280 (Ill. App. Ct. 2004).................................................................................................14

*Bushkin Assocs. v. Raytheon Co.*, 473 N.E.2d 662 (Mass. 1985).......................................8

*Carrieri v. Liberty Life Ins. Co.*, No. 09-12071, 2011 WL 3794893 (D. Mass. Aug. 26, 2011) .........................................................................................................8

*Cirrincione v. Johnson*, 703 N.E.2d 67 (Ill. 1998) ..........................................................13

*Debnam v. FedEx Home Delivery*, No. 10-11025, 2011 WL 1188437 (D. Mass. Mar. 31, 2011).......................................................................................................17

*Draper v. Frontier Ins. Co.*, 638 N.E.2d 1176 (Ill. App. Ct. 1994)..................................15

*Entrialgo v. Twin City Dodge, Inc.*, 333 N.E.2d 202 (Mass. 1975)..................................10

*Faherty v. CVS Pharmacy, Inc.*, 2011 WL 810178 (D. Mass. 2011) .................................9

*First Amer. Discount Corp. v. Jacobs*, 756 N.E.2d 273 (Ill. App. Ct. 2001) ...................16

*Garanti Finansal Kiralama S.A. v. Aqua Marine & Trading, Inc.*, 697 F.3d 59 (2d Cir. 2012) ...........................................................................................................17

*Greenberger v. GEICO Gen. Ins. Co.*, 631 F.3d 392 (7th Cir. 2011)...............................15

*Gross v. Town of Cicero*, 619 F.3d 697 (7th Cir. 2010) ...................................................15

*Horbach v. Kaczmarek*, 288 F.3d 969 (7th Cir. 2002) .....................................................14

ii

*Howe v. National Life Ins. Co.*, 72 N.E.2d 425 (Mass. 1947) .............................................5

*HPI Health Care Servs., Inc. v. Mt. Vernon Hosp.* 545 N.E.2d 672 (Ill. 1989) ...............11

*Illinois State Bar Assn. Mut. Ins. Co. v. Cavenagh*, No. 1-11-1810, 2012 WL
    6643904 (Ill. App. Ct. Dec. 20, 2012) ........................................................................15

*In re Aqua Dots Prods. Liab. Litig.*, 270 F.R.D. 377 (N.D. Ill. 2010)...............................12

*In re Murray*, 276 B.R. 869 (Bankr. N.D. Ill. 2002)...........................................................13

*In Re Pharm. Indus. Average Wholesale Price Litig.*, 230 F.R.D. 61 (D. Mass.
    2005) .................................................................................................................................9

*Jensen v. Chicago & W. Ind. R.R. Co.*, 419 N.E.2d 578 (Ill. App. Ct. 1981)...................14

*Kartman v. State Farm Mut. Auto. Ins. Co.*, 634 F.3d 883 (7th Cir. 2011) ......................12

*Martin v. State Farm Mut. Auto. Ins. Co.*, 808 N.E.2d 47 (Ill. App. Ct. 2004)................15

*Martinell v. Navistar Intern. Corp.*, No. 11 C 8707, 2012 WL 2503964 (N.D. Ill.
    Jun. 28, 2012)..................................................................................................................11

*Minh Tu v. Mut. Life Ins. Co. of N.Y.*, 136 F.3d 77 (1st Cir. 1998) .....................................4

*O'Reilly v. The Guardian Mut. Life Ins. Co.*, 60 N.Y. 169 (N.Y. 1875) .............................5

*Olson v. Etheridge*, 686 N.E.2d 563 (Ill. 1997)................................................................12

*Phillips v. Prudential Ins. Co. of Amer.*, No. 11-cv-0058, 2011 WL 5915148 (S.D.
    Ill. Nov. 28, 2011)....................................................................................................15, 16

*PMP Assocs., Inc. v. Globe Newspaper Co.*, 321 N.E.2d 915 (Mass. 1975)....................10

*Prudential Ins. Co. of Amer. v. Athmer*, 178 F.3d 473 (7th Cir. 1999) ..............................8

*Riccio v. Ford Motor Credit Co.*, 238 F.R.D. 44 (D. Mass. 2006)....................................11

*Rockwell Int'l Corp. v. IU Int'l Corp.*, 702 F. Supp. 1384 (N.D. Ill. 1988) .....................16

*Rodi v. Southern New England School of Law*, 389 F.3d 5 (1st Cir. 2004)........................10

*Shaw v. Digital Equip. Corp.*, 82 F.3d 1194 (1st Cir. 1996) ...............................................4

*Sprint Spectrum LP v. Town of Easton*, 982 F. Supp. 47 (D. Mass. 1997).................16, 17

iii

*Tellabs, Inc. v. Makor Issues & Rights, Ltd*., 551 U.S. 308 (2007) .....................................3

*The Sharrow Grp. v. Zausa Dev. Corp.*, No. 04 C 6379, 2004 WL 2806193 (N.D. Ill. Dec. 6, 2004) .........................................................................................................12

*Tierney v. John Hancock Mut. Life Ins. Co.*, 791 N.E.2d 925 (Mass. App. Ct. 2003) .......................................................................................................................3

*Triumph Packaging Grp. v. Ward*, No. 11 C 7927, 2012 WL 5342316 (N.D. Ill. Oct. 29, 2012) .......................................................................................................14

*Van Diest Supply Co. v. Shelby Cty. State Bank*, 425 F.3d 437 (7th Cir. 2005) ...............13

*Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995) .................................................................17

*Winkfield v. Am. Continental Ins. Co.*, 249 N.E.2d 174 (Ill. App. Ct. 1969) ......................4

## Statutes & Regulations

215 ILCS 5/154.6 ..................................................................................................................5

765 ILCS 1025/3 ...............................................................................................................1, 6

765 ILCS 1025/3a ..................................................................................................................6

28 U.S.C. § 2201 .................................................................................................................17

Ill. Admin. Code tit. 50 § 919.40 ..........................................................................................5

M.G.L. ch. 93A ..............................................................................1, 2, 7, 8, 9, 10, 11

M.G.L. ch. 176D ....................................................................................................................5

M.G.L. ch. 200A ....................................................................................................................6

N.Y. Comp. Codes R. & Regs. 226.0 ....................................................................................7

N.Y. Ins. L. § 3213-a .............................................................................................................6

## Other Authorities

R. Keeton, *Basic Text on Insurance Law* (West 1971) ......................................................1, 5

iv

N.Y. Ins. Dep't, Request for Special Report Pursuant to Section 308 of the New
    York Insurance Law, July 5, 2011 ...............................................................................7

Restatement (Second) of Conflict of Laws ........................................................................8

Defendants John Hancock Life Insurance Company (U.S.A.) and John Hancock Life & Health Insurance Company (together, "John Hancock") respectfully submit this memorandum in support of their motion to dismiss plaintiff's Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## PRELIMINARY STATEMENT

Under settled insurance law, proceeds of a life insurance policy are payable after a beneficiary provides notice and "due proof of death" – typically a death certificate – to a life insurer.  R. Keeton, *Basic Text on Insurance Law*, 445-451 (West 1971).  Uniform unclaimed property laws like those in Illinois reflect this principle by deeming proceeds of a life insurance policy to be abandoned if unpaid more than five years after they became payable "by actual proof of death of the insured."  765 ILCS 1025/3(b).  Although the Complaint alleges that John Hancock followed a "practice of avoiding payment of life insurance policy death benefits" or not timely escheating such amounts, plaintiff admits that he was "unaware of the life insurance policy his mother had purchased in 1945" and thus never contacted John Hancock about the policy until January 2012.  (Complaint ¶¶ 1, 8, 20, 23)  After plaintiff subsequently provided documentation to John Hancock, it sent plaintiff a payment.  (*Id.* ¶¶ 24, 26.)  The Complaint seeks to discard settled law by requiring payment or escheatment of life insurance proceeds where a beneficiary has made no claim on the policy.

Plaintiff's claim under the Massachusetts Consumer Protection Act, Massachusetts General Law chapter 93A ("ch. 93A"), should be dismissed for three reasons.  *First,*

plaintiff is an Illinois resident suing as a beneficiary to a life insurance policy issued in Illinois to his mother, an Illinois resident, whose death in Illinois was a precondition to payment of benefits under the policy.   Ch. 93A does not apply to such an out-of-state plaintiff.   *Second,* even if Massachusetts law did apply to this dispute, plaintiff failed to comply with the mandatory pre-suit demand provisions of ch. 93A.   *Third,* in light of established law, John Hancock did not engage in any "deception" under ch. 93A by not paying or escheating benefits before plaintiff contacted John Hancock about his mother's policy.

The Complaint's common law counts are also undermined by settled insurance law and should be dismissed on the following additional grounds.   Plaintiff's claim for unjust enrichment should be dismissed because he has adequate remedies at law.   Plaintiff's claim of conversion fails where he alleges only a conditional right to a general debt or obligation, rather than an unconditional right to specific chattel.   Plaintiff's fiduciary duty claim fails because, as a matter of law, insurers owe no such duty to their insureds or the beneficiaries of those insured.   Finally, this Court should exercise its discretion to dismiss plaintiff's request for declaratory relief where that request is focused on past harms and seeks a declaration contrary to established state law.

## BACKGROUND

### A.    Factual Allegations

The John Hancock defendants are successors in interest to John Hancock Mutual Life Insurance Company, which issued a life insurance policy to plaintiff's mother in

1945.  (Compl. ¶ 19)  Plaintiff's mother was an Illinois resident when she applied for and purchased the industrial policy.[1]  Plaintiff's mother died in December 2006.  (*Id.* ¶ 20)

Plaintiff was unaware of his mother's life insurance policy.[2]  (*Id.* ¶ 20)  He alleges that he first became aware of money owed by John Hancock to his mother in late 2010 from the Illinois Treasurer's unclaimed property website "CashDash."  (*Id.* ¶ 21)  Plaintiff alleges that he was informed that $459 represented "dividends" – not money escheated from any life insurance policy.  (*Id.*)  John Hancock Mutual Life Insurance Company had converted from a mutual life insurance company to a publicly owned life insurance company through a process known as demutualization in 1999 and 2000, and as part of that process had distributed stock or cash to policyholders.  *See Tierney v. John Hancock Mut. Life Ins. Co.*, 791 N.E.2d 925 (Mass. App. Ct. 2003).  The "dividends" were actually demutualization proceeds.[3]

In January 2012, plaintiff contacted John Hancock seeking to determine whether there were any life insurance proceeds.  (Compl. ¶ 23)  He was told that plaintiff's mother had purchased a policy, and John Hancock sent plaintiff forms to be filled out to make a

---

[1]   A copy of the life insurance application of plaintiff's mother as well as the likely form of policy issued to her are attached as Exhibits A and B to the Affirmation of Patricia A. Carli ("Carli Aff.").  The Court may properly consider these documents on a motion to dismiss as "documents incorporated into the complaint by reference."  *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).  John Hancock did not retain copies of individual industrial policies.  Carli Aff., ¶ 3.

[2]   Additionally, plaintiff was not listed as a beneficiary on Ms. Feingold's application.  Ms. Feingold's husband (plaintiff's father) was the only named beneficiary of the policy.  *Id.*, Ex. B.

[3]   Ms. Feingold received $459, which was the economic equivalent of 27 shares at a price of $17 per share.  *Id.*, ¶ 7.

claim.   (*Id.*)   After providing the requested information and documentation to John Hancock, plaintiff received a payment of $1,349.71 but not a copy of the policy.   (*Id.* ¶¶ 24, 26) [4]

Plaintiff does not allege that he failed to receive any particular sum owed to him under the policy.  He does not allege that he was deprived of any funds by John Hancock's escheatment of "dividends" to the State, which plaintiff admittedly recovered through the procedures provided by the Illinois Treasury.  Finally, plaintiff does not allege that John Hancock was ever made aware of his existence prior to his contacting the Company in 2012 or that the Company, through its escheatment of demutualization proceeds, could have ascertained his existence as a beneficiary.

**B.      The Applicable Legal Framework**

Under the law of Illinois and other states, life insurance benefits are payable only upon receipt of "due proof of death" from a beneficiary to an insurer.  *Winkfield v. Am. Continental Ins. Co.*, 249 N.E.2d 174, 177 (Ill. App. Ct. 1969) ("The sole question concerning [insurer's payment obligations under] the life policy is whether the required forms of due proof of death of the insured were filed with the defendant."); *see also Minh Tu v. Mut. Life Ins. Co. of N.Y.*, 136 F.3d 77, 79-80 (1st Cir. 1998) (under Massachusetts

---

[4]      John Hancock sent plaintiff the check for $1,349.71 on June 1, 2012.  (Compl. ¶ 26).  A copy of the check stub shows this payment reflected $470.48 of death benefit, $91.80 of additional benefit, $528.11 of additional paid up benefit, $12.26 of settlement dividend, and $247.06 of interest on policy claim.  Carli Aff., ¶ 6, Ex. C.  *See supra* note 1; *see also Shaw v. Digital Equip. Corp.*, 82 F.3d 1194, 1220 (1st Cir. 1996) (stating a court "may properly consider the relevant entirety of a document integral to or explicitly relied upon in the complaint, even though not attached to the complaint, without converting the motion [to dismiss] into one for summary judgment"), *abrogated on other grounds by* 15 U.S.C. § 78-4(b)(2).

law "due proof is the proof furnished to the insurer [that] shows on the whole that the claim is of a class within the protection of the policy, so that *if* the proofs should be accepted as true the insurer reasonably might pay the claim.") (internal citations and quotations omitted); *Howe v. National Life Ins. Co.*, 72 N.E.2d 425, 427 (Mass. 1947) ("The purpose of furnishing the defendant with due proof [of death] is to enable it to form an intelligent estimate as to whether the death came within the terms of the policy."); *O'Reilly v. The Guardian Mut. Life Ins. Co.*, 60 N.Y. 169, 172 (N.Y. 1875) ("notice and proof of death required as conditions precedent to a right of action upon the contract"); Keeton at 445-51.

Illinois law governing insurance claims settlement practices also conditions an insurer's liability upon the presentation of a claim to benefits. *E.g.*, 215 ILCS 5/154.6(i) ("Failing to affirm or deny coverage of claims within a reasonable time *after proof of loss statements have been completed* [constitutes an improper claims practice]." (emphasis added)); ILL. ADMIN. CODE tit. 50 § 919.40 ("Notification of Loss shall mean communication, as required by the policy or that is otherwise acceptable by the insurer, from a claimant or insured to the insurer which identifies the claimant or insured and indicates that a loss has occurred or is about to occur.").[5] The policy issued to plaintiff's mother is consistent with this principle. Carli Aff., Ex. A.

---

[5] For the reasons provided below, Illinois law applies to claims handling and escheatment of proceeds of a life insurance policy in Illinois. Nevertheless, Massachusetts claims settlement practices law is virtually identical to that in Illinois in these respects. *See, e.g.*, M.G.L. ch. 176D § 3(9)(e) (applies to "[f]ailing to affirm or deny coverage of claims within a reasonable time *after proof of loss statements have been completed*") (emphasis added).

5

The Illinois Uniform Disposition of Unclaimed Property Act ("IUDUPA") in addressing funds owed under life insurance policies reflects the established rule by defining "unclaimed funds" held by life insurance companies as "all moneys held and owing by any life insurance corporation unclaimed and unpaid for more than 5 years after the moneys *became due and payable . . . .*" 765 ILCS 1025/3(b) (emphasis added). Where a life insurance policy is "not matured by *actual proof of the death* of the insured," the IUDUPA provides that the policy is "deemed" to be "due and payable" only if such policy was in force when the insured attained the applicable limiting age, a circumstance not present here. *Id.*[6]

The IUDUPA, like many states, treats the escheatment of demutualization proceeds in a wholly separate provision. *See* 765 ILCS 1025/3a. Rather than tying escheatment to the date that policy proceeds become "due and payable" by way of the submission of a claim or the attainment of the limiting age, Illinois law provides for escheatment "2 years after the date of the demutualization . . . if the funds remain unclaimed." 765 ILCS 1025/3a(a)(1). Thus, the delivery of demutualization funds to the State has no bearing on the timing of escheatment of life insurance proceeds.

Neither of these statutory schemes imposes a duty on John Hancock to undertake affirmative outreach to beneficiaries, or to the heirs of beneficiaries, prior to the submission of a claim.[7]

---

[6]   Massachusetts' Unclaimed Property Law, M.G.L. ch. 200A, § 5A is substantively identical to the provision of Illinois law quoted above.

[7]   Notably, New York – but not Illinois or Massachusetts – recently  enacted a statute designed *legislatively* to alter this state of affairs. *See, e.g.*, N.Y. Ins. L. § 3213-a(f)("Every insurer

**C.     Procedural Background**

Plaintiff filed suit on January 30, 2013.  At no time prior to the filing of this suit was John Hancock provided with statutorily required pre-suit demand pursuant to Massachusetts General Laws ch. 93A, § 9(3).

## STANDARD OF REVIEW AND APPLICABLE LAW

To survive a Rule 12(b)(6) motion, a plaintiff must allege sufficient facts "to raise a right to relief above the speculative level" and must provide "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007).  Although the Court must accept as true all of the factual allegations contained in the Complaint, mere labels and conclusions or a formulaic recitation of the elements of a cause of action will not suffice. *Twombly*, 550 U.S. at 555.  Legal conclusions are not entitled to an assumption of truth. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

A federal court sitting in diversity applies the substantive law, including choice of law principles, of the forum state. *Artuso v. Vertex Pharm., Inc.*, 637 F.3d 1, 5 (1st Cir. 2011).  Plaintiff's allegation that Massachusetts law applies to all claims is an incorrect legal conclusion and entitled to no weight. *Iqbal*, 556 U.S. at 679.  Massachusetts follows

---

shall establish procedures to reasonably confirm the death of an insured or account holder and begin to locate beneficiaries within ninety days after the identification of a potential match [against the Social Security Death Master File]. . . . Nothing herein shall prevent an insurer from requiring satisfactory proof of loss, such as a death certificate, for the purpose of verifying the death of the insured.").  The New York Insurance Department had previously announced that it had to amend existing regulations to impose such requirements.  N.Y. Ins. Dep't, Request for Special Report Pursuant to Section 308 of the New York Insurance Law, July 5, 2011, *available at* http://www.dfs.ny.gov/insurance/life/section_308.htm; *see also* 11 N.Y. Comp. Codes R. & Regs. 226.0 (describing common practice by life insurers prior to enactment of new regulations).

7

the "functional" choice of law approach set forth in the Restatement (Second) of Conflict of Laws, including section 192 of the Restatement, addressing principles applicable to disputes concerning insurance contracts, and the more general principles contained in sections 6, 145-46 and 186-88, each applying a "most significant relationship" analysis. *See Bushkin Assocs. v. Raytheon Co.*, 473 N.E.2d 662, 668-72 (Mass. 1985) (applying these principles to, *inter alia*, claims arising under M.G.L. ch. 93A). "Absent an express choice of law, a life insurance policy is governed by the law of the state where the insured was domiciled when the contract was applied for unless another state has a more significant relationship . . . ." *Carrieri v. Liberty Life Ins. Co.*, No. 09-12071, 2011 WL 3794893, at *2 (D. Mass. Aug. 26, 2011) (applying Massachusetts choice of law rules); *see also Prudential Ins. Co. of Amer. v. Athmer*, 178 F.3d 473, 477 (7th Cir. 1999) ("In the case of life insurance, that rule picks the law of the state where the insured was domiciled when the policy was applied for, hence in this case Illinois, unless some other state has a more significant relationship.")

Here, the insured was domiciled in Illinois, and the parties to the contract contemplated that the law of the state where the policy was issued and delivered would govern. *See* Carli Aff., Ex. A at 2 ("If any provision of this policy conflicts with the statutes of the State in which this policy is issued or delivered, such provision shall be construed to conform thereto."). No other state has a more significant relationship to the dispute than Illinois, where any alleged injury occurred and where both the insured and the named beneficiary resided at the time of contracting and at the time of their respective

8

deaths.  (Plaintiff, apparently an heir to the third-party beneficiary of that contract, is also an Illinois resident.)  For all of these reasons, Illinois law should apply.

## ARGUMENT

I.     **Plaintiff's Ch. 93A Claim Should Be Dismissed**

Plaintiff's claim under ch. 93A should be dismissed for three reasons.  *First,* ch. 93A is designed for the protection of Massachusetts residents.  Where the alleged impact of a Massachusetts's corporation's actions falls on out-of-state residents, Massachusetts courts will not apply ch. 93A to the resolution of that dispute.  *See, e.g.*, *Faherty v. CVS Pharmacy, Inc.*, No. 09-cv-12102, 2011 WL 810178, at *5 (D. Mass. 2011) (declining to certify a nationwide class in part because state consumer protection laws, including ch. 93A, could not be applied to the claims of out-of-state class members); *see also In Re Pharm. Indus. Average Wholesale Price Litig.*, 230 F.R.D. 61, 83 (D. Mass. 2005) ("The conclusion that the home state of the consumer has a more significant relationship to the alleged fraud than the place of business of the defendant is in accordance with the principles of Restatement § 6, since state consumer protection statutes are designed to protect consumers rather than to regulate corporate conduct.").

*Second*, even assuming that ch. 93A could apply to plaintiff's claims, plaintiff has failed to either plead or actually comply with the mandatory demand provisions of that statute.  Section 9(3) of ch. 93A provides that, "[a]t least thirty days prior to the filing of any such action, a written demand for relief, identifying the claimant and reasonably describing the unfair or deceptive act or practice relied upon and the injury suffered, shall

be mailed or delivered to any prospective respondent." M.G.L. ch. 93A, § 9(3).[8]  Failure

to comply with this demand requirement is fatal to the Complaint. *Rodi v. Southern New*

*England School of Law*, 389 F.3d 5, 19 (1st Cir. 2004) ("The statutory notice requirement

is not merely a procedural nicety, but, rather, a prerequisite to suit.") (internal quotation

marks omitted); *Entrialgo v. Twin City Dodge, Inc.*, 333 N.E.2d 202, 204 (Mass. 1975)

("A demand letter listing the specific deceptive practices claimed is a prerequisite to suit

and as a special element must be alleged and proved.").

*Third*, there is no deception based on John Hancock's following settled law.  In

order to constitute an unfair or deceptive trade practice, the Court must assess whether the

alleged practice falls within the "penumbra of some common-law, statutory, or other

established concept of unfairness; . . . whether it is immoral, unethical, oppressive, or

unscrupulous; . . . [or] whether it causes substantial injury to consumers (or competitors or

other businessmen)." *PMP Assocs., Inc. v. Globe Newspaper Co.*, 321 N.E.2d 915, 917-18

(Mass. 1975).  Because John Hancock's practices follow statutory schemes that

affirmatively permit life insurance companies to require due proof of death prior to settling

a claim and that affirmatively permit a life insurance company to escheat only upon

proceeds becoming "due and payable" by reference to "actual proof of death," no such

finding is possible as a matter of law. *See* M.G.L. ch. 93A, § 3 ("Nothing in this chapter

shall apply to transactions or actions otherwise permitted under laws as administered by

---

[8]   This provision "shall not apply if . . . the prospective respondent does not maintain a place of
business or does not keep assets within the commonwealth." *Id.*  Plaintiff admits that this
exemption does not apply. *See* Compl. ¶ 29 ("Defendants' headquarters and principal places
of business are located in Massachusetts.").

any regulatory board or officer acting under statutory authority of the commonwealth or of the United States"); *see also Riccio v. Ford Motor Credit Co.*, 238 F.R.D. 44, 48 (D. Mass. 2006) ("The [Massachusetts] Department of Revenue regulations affirmatively permit Ford Credit to include the excise tax in the amount on which the sales tax is assessed. Ford Credit's actions are exempt under section 3 of chapter 93A."); *Bierig v. Everett Square Plaza Assocs.*, 611 N.E.2d 720, 728 (Mass. App. Ct. 1993) ("This was not a situation where there was a mere existence of a related or even overlapping regulatory scheme that covers the transaction.  Rather, the Act, the regulations, and the evidence at the motion hearing clearly established that the rents charged were permitted by the regulatory scheme; the owner is therefore exempt from judgment under [M.G.L. ch. 93A § 3].") (internal quotations and citations omitted).

II.    **The Complaint's Common Law Counts Should Be Dismissed**

    A.    **Plaintiff's Unjust Enrichment Claim Should Be Dismissed in Light of Adequate Legal Remedies and for Failure to Plead Either an "Impoverishment" or that John Hancock's Actions Lacked Justification**

To state a claim for unjust enrichment under Illinois law, plaintiff must adequately allege that "(1) plaintiff has no adequate remedy at law, (2) the defendant has unjustly retained a benefit to plaintiff's detriment, and (3) that retention violates fundamental principles of justice, equity, and good conscience."  *Martinell v. Navistar Intern. Corp.*, No. 11 C 8707, 2012 WL 2503964, at *6 (N.D. Ill. Jun. 28, 2012) (citing *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp.,* 545 N.E.2d 672, 679 (Ill. 1989)).

Plaintiff purports to be a beneficiary to an insurance contract, and as such, his claims are governed by contract. *Olson v. Etheridge*, 686 N.E.2d 563, 566 (Ill. 1997) ("The well-established rule in Illinois is that if a contract is entered into for the direct benefit of a third person, the third person may sue for a breach of the contract in his or her own name, even though the third person is a stranger to the contract and the consideration."). Illinois law is clear that "[u]njust enrichment is unavailable where a specific contract governs the relationship of the parties." *In re Aqua Dots Prods. Liabil. Litig.*, 270 F.R.D. 377, 386 (N.D. Ill. 2010); *see also Bd. of Mgrs. of Hidden Lake Townhome Owners Assoc. v. Green Trails Improvement Assoc.*, 934 N.E.2d 636, 644 (Ill. App. Ct. 2010) ("Unjust enrichment is based on an implied contract, and the theory does not apply where there is a specific contract that governs the relationship of the parties."). *Cf. Kartman v. State Farm Mut. Auto. Ins. Co.*, 634 F.3d 883, 891 (7th Cir. 2011) (applying Indiana law and holding that "the existence of an express contract precludes recovery under the theory of unjust enrichment . . . [b]ecause [plaintiffs] had written insurance policies . . . their unjust enrichment claim is not actionable") (internal quotations and citations omitted). The allegations in the Complaint make clear that plaintiff's relationship with John Hancock is governed by contract – his mother's insurance policy. Compl. ¶¶ 19-26, 54. As a result, he cannot sustain a claim for unjust enrichment. *See The Sharrow Grp. v. Zausa Dev. Corp.*, No. 04 C 6379, 2004 WL 2806193, at *3 (N.D. Ill. Dec. 6, 2004) (granting motion to dismiss unjust enrichment claim where complaint included allegations that an express contract governed the parties' relationship).

12

Dismissal of plaintiff's unjust enrichment claim is also warranted because plaintiff fails to adequately plead that John Hancock retained any benefit, to plaintiff's detriment, insofar as he alleges neither that he paid premiums to John Hancock nor any facts demonstrating that proceeds owed to plaintiff were in fact withheld.[9]   Finally, the circumstances under which John Hancock held the proceeds that were ultimately paid to plaintiff are plainly not "unjust" where John Hancock's actions, as alleged, comply with the requirements of both the claims settlement practices and unclaimed property laws of the State of Illinois.  *See In re Murray*, 276 B.R. 869, 878 (Bankr. N.D. Ill. 2002) (finding dismissal of unjust enrichment claim appropriate where defendant's "conduct in following the relevant statutes" was not "unjust or wrongful," as required by Illinois law).

### B.      Plaintiff's Conversion Claim Fails as a Demand for a Conditional and General Debt

Plaintiff's claim for conversion should be dismissed because the Complaint fails to identify the allegedly converted assets and fails to plead that plaintiff had any immediate and unconditional right to insurance benefits, as required by Illinois law.  *Van Diest Supply Co. v. Shelby Cty. State Bank*, 425 F.3d 437, 439 (7th Cir. 2005) ("In order to recover for conversion in Illinois, plaintiff must show: (1) a right to property; (2) an absolute and unconditional right to immediate possession of property; (3) a demand for possession; and (4) that the defendant wrongfully and without authorization assumed control, dominion, or ownership over property.") (citing *Cirrincione v. Johnson*, 703 N.E.2d 67, 70 (Ill. 1998)).

---

[9]      Plaintiff also asserts in the paragraphs setting forth Count II of the Complaint that John Hancock "impos[ed] an administrative charge on [Plaintiff's] unclaimed funds."  Compl. ¶ 55. Plaintiff offers no factual basis for this conclusory allegation.

13

Plaintiff seeks the return of a general debt rather than a specific chattel, barring recovery for conversion under Illinois law.  Illinois law provides that "[a]s a general rule, an action for conversion cannot be maintained when the action seeks the return of money." *Triumph Packaging Grp. v. Ward*, No. 11 C 7927, 2012 WL 5342316, at *6 (N.D. Ill. Oct. 29, 2012) (internal quotations and citations omitted).  Claims for conversion based on money may only be sustained where the allegedly converted funds are "*specific* chattel. . . a *specific* fund or *specific* money in coin or bills"; claims for a general debt will not suffice.  *Horbach v. Kaczmarek*, 288 F.3d 969, 978 (7th Cir. 2002) (internal quotations and citations omitted) (emphasis added).  Rather than alleging the conversion of some specified fund provided by plaintiff to John Hancock, the Complaint demands the repayment of an unspecified debt to be paid upon the fulfillment of an insurance policy's claims requirements.  *Compare Bill Marek's The Competitive Edge, Inc. v. Mickelson Grp., Inc.*, 806 N.E.2d 280, 286 (Ill. App. Ct. 2004) (permitting a claim for conversion where "the funds were the specific funds transferred to defendant from an outside source" rather than "a portion of [defendant's] own assets that defendant was obligated to use to satisfy a debt to plaintiff") *with* Compl. ¶¶ 62-64 (basing conversion claim on unspecified unpaid proceeds owed under insurance policies).

Plaintiff's conversion claim also fails because plaintiff had no "immediate and unconditional right" to insurance proceeds.  Rather, plaintiff's right to funds was conditioned on numerous steps – at a minimum, his submission of a claim to John Hancock and John Hancock's investigation and verification of that claim.  The conditional nature of plaintiff's right to the funds precludes his claim for conversion.  *See Jensen v.*

14

*Chicago & W. Ind. R.R. Co.*, 419 N.E.2d 578, 593 (Ill. App. Ct. 1981) (for a claim of conversion, plaintiff must show "a right to immediate possession which is absolute and unconditional and not dependent upon the performance of some act").

### C. Plaintiff's Claim for Breach of Fiduciary Duty Fails Because John Hancock Owes No Fiduciary Duty and Plaintiff Does Not Allege a Breach of Any Purported Duty

Plaintiff's claim for breach of fiduciary duty fails because plaintiff has not pleaded the existence of a fiduciary duty or that John Hancock's conduct constituted a breach of any purported duty. *Gross v. Town of Cicero, Ill.*, 619 F.3d 697, 709 (7th Cir. 2010).

As a matter of Illinois law, insurers owe no fiduciary duty to their insureds or the beneficiaries of those insureds. *Greenberger v. GEICO Gen. Ins. Co.*, 631 F.3d 392, 401 (7th Cir. 2011) (applying Illinois law and noting "insurers ordinarily are not fiduciaries"); *see also Phillips v. Prudential Ins. Co. of Amer.*, No. 11-cv-0058, 2011 WL 5915148, at *5 (S.D. Ill. Nov. 28, 2011) ("It is well settled in Illinois that a fiduciary relationship does not exist between an insurer and insured."); *Illinois State Bar Assn. Mut. Ins. Co. v. Cavenagh*, No. 1-11-1810, 2012 WL 6643904, at *9 (Ill. App. Ct. Dec. 20, 2012) (dismissing breach of fiduciary duty claim by insured against insurer). The relationship between insured and insurer is governed by the insurance policy, and "the mere fact that a contract of insurance or a contract to settle plaintiffs' claim existed between the parties is insufficient to support a finding of a fiduciary relationship." *Martin v. State Farm Mut. Ins. Co.*, 808 N.E.2d 47, 52 (Ill. App. Ct. 2004). This rule applies equally to plaintiff as a beneficiary of the insurance policy. *See Draper v. Frontier Ins. Co.*, 638 N.E.2d 1176, 1179 (Ill. App. Ct.

15

1994) ("[U]nder Illinois law, a third-party beneficiary, plaintiff has no greater rights under contract than the party under which she claims.").

Plaintiff's vague and conclusory allegations – including that John Hancock became a fiduciary "by reason of their holding unclaimed property," Complaint ¶ 67 – do not establish the existence of a fiduciary relationship. *See Phillips*, 2011 WL 5915148, at *5 ("While it is true that the common law trustee's most defining concern . . . has been the payment of money in the interest of the beneficiary, applying ['trustee status'] to an insurer/insured relationship would transform an insurance company into a trustee in every situation in which it pays benefits.") (internal quotations and citations omitted).

Moreover, even if plaintiff could plausibly plead the existence of a fiduciary relationship, John Hancock's adherence to the normal claims process, consistent with Illinois claims settlement practice and unclaimed property law, would not constitute a breach of any such duty. *First Amer. Discount Corp. v. Jacobs*, 756 N.E.2d 273, 285 (Ill. App. Ct. 2001) (dismissing breach of fiduciary duty claim where defendant's allegedly wrongful conduct was in conformance with regulatory scheme).

> ### D. The Court Should Exercise Its Discretion to Decline to Entertain Plaintiff's Declaratory Judgment Count

"The purpose of declaratory judgment under 28 U.S.C. § 2201, is to allow the parties to understand their rights and liabilities so that they can adjust their future action to avoid unnecessary damages." *Sprint Spectrum LP v. Town of Easton*, 982 F. Supp. 47, 52 (D. Mass. 1997) (quoting *Rockwell Int'l Corp. v. IU Int'l Corp.*, 702 F. Supp. 1384, 1388 (N.D. Ill. 1988)). The exercise of the Court's power to entertain a request for declaratory

16

relief is discretionary and "yields to considerations of practicality and wise judicial administration." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 288 (1995).

The plaintiff's proposed Declarations should be dismissed because they seek no relief designed to settle *future* disputes or to avoid future "uncertainty and insecurity" as between the parties. *See Garanti Finansal Kiralama A.S. v. Aqua Marine & Trading, Inc.*, 697 F.3d 59, 66 (2d Cir. 2012) (declaratory judgments are designed "to settle legal rights and remove uncertainty and insecurity from legal relationships without awaiting a violation of the rights or a disturbance of the relationships"); *see also Sprint Spectrum*, 982 F. Supp. at 52 (dismissing request for declaratory judgment where "Plaintiff is seeking declarations that Defendant's past conduct. . . violated federal and state law"). Indeed, even the sole proposed Declaration purporting to apply "on a going forward basis," Declaration V, merely reflects the necessary outcome in the event that plaintiff were to succeed, for example, on a contract claim. *Cf. Debnam v. FedEx Home Delivery*, No. 10-11025, 2011 WL 1188437, at *1 (D. Mass. Mar. 31, 2011) ("Clearly a controversy exists as to whether the plaintiff was an employee or independent contractor under the appropriate laws, but declaratory relief would add nothing to the coercive claim the plaintiff has made.").

In any event, declaratory relief is improper where plaintiff's claims are premised on the incorrect assertion that John Hancock, rather than the plaintiff or another claimant under Ms. Feingold's policy, was obligated to initiate the claims settlement process. Further, plaintiff's demand that John Hancock return escheated funds is completely improper absent any plausible allegations that such funds were wrongfully escheated.

17

774706.1

These claims run counter to established insurance and unclaimed property law and should be denied as a basis for declaratory relief.

## CONCLUSION

For the reasons stated above, John Hancock respectfully requests that the Court dismiss the Complaint for failure to state a claim, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

/s/ Myles W. McDonough
Myles W. McDonough, BBO# 547211
Christopher M. Reilly, BBO# 674041
SLOANE AND WALSH, LLP
Three Center Plaza, 8th Floor
Boston, Massachusetts 02108
Tel: 617-523-6010

Edwin G. Schallert
DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, New York 10022
Tel: 212-909-6000

Date:  February 26, 2013

18

## **CERTIFICATE OF SERVICE**

I, Myles W. McDonough, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered participants.

/s/   Myles W. McDonough
Myles W. McDonough

19