**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| RICHARD FEINGOLD, individually ) <br> and as a representative of a class of ) <br> similarly-situated persons, ) <br> ) <br>       Plaintiff, ) <br>   v. ) <br> ) <br> JOHN HANCOCK LIFE INSURANCE ) <br> COMPANY (USA) and JOHN HANCOCK ) <br> LIFE & HEALTH INSURANCE ) <br> COMPANY, ) <br> ) <br>       Defendants. ) | CIVIL ACTION <br> No. 1:13-CV-10185 |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS THE COMPLAINT**

Plaintiff, RICHARD FEINGOLD ("Plaintiff"), on behalf of himself and all other persons similarly situated, responds in opposition to JOHN HANCOCK LIFE INSURANCE COMPANY (USA) and JOHN HANCOCK LIFE & HEALTH INSURANCE COMPANY's ("Defendants") Motion to Dismiss (Doc. 9, 10), and in support states as follows:

**Introduction and Background**

**1.**   **General Background**

This case is a class action and arises from Defendants' pattern and practice of avoiding payment of life insurance policy death benefits that are owed to beneficiaries. This practice enables Defendants to collect and enjoy interest on unclaimed benefits, charge against policy benefits, and otherwise benefit from holding unclaimed benefits. Defendants' pattern and practice of handling unclaimed property in such a manner as to not pay benefits and/or not timely escheat the unclaimed property to a State has affected thousands of policy holders and

beneficiaries in each of the States in which Defendants market life insurance policies. (Doc. 1, par. 8).

Plaintiff's Complaint alleges Violation of Massachusetts or, alternately, Various States' Consumer Protection Laws (Count I); Unjust Enrichment (Count II); Conversion (Count III); Breach of Fiduciary Duty (Count IV); and Declaratory Judgment (Count V).

**2.     Factual Background**

Plaintiff's mother purchased a life insurance policy from Defendants in 1945. (Doc. 1, par. 19). Plaintiff's mother passed way in December 2006. (Doc. 1, par. 20). Subsequently, in 2009, Defendants converted from a mutual to a publically traded company. This meant Plaintiff's mother was entitled to "dividends" or "demutualization proceeds" from her mutual ownership interest in Defendants and payment of the benefits of her life insurance policy. (Doc. 1, pars. 22, 26). In other words, Defendants owed Plaintiff money from two different parts of their companies: the people who pay the "dividends" and the people who pay life insurance proceeds. Plaintiff was unaware of the life insurance policy his mother purchased from Defendants in 1945. (*Id.*).

Sometime before 2010, Defendants' 'people who pay dividends' esheated Plaintiff's mother's dividend money to the State of Illinois. (Doc. 1, par. 21). In contrast, Defendants 'people who pay life insurance proceeds' held on to the policy benefits of Plaintiff's mother's policy. (Doc. 1, pars. 20-26). Quite simply, one part of Defendants' company determined they had to escheat money regarding Plaintiff's mother and another part of Defendants' company reached the direct opposite decision.

### 3. The Global Resolution Agreement

Defendants' failure to pay or escheat death policy benefits, just like Defendants' failure to pay or escheat Plaintiff's mother's death benefits, has resulted in several States investigating Defendants' practices regarding payment of death benefits. (Doc. 1, pars. 7-10). The audit performed as part of the investigation resulted in Defendants entering into a Global Resolution Agreement. (Doc. 1, par. 9). The Global Resolution Agreement was entered into *before* Defendants paid Plaintiff's mother's life policy benefits to Plaintiff. (Doc. 1, pars. 9, 26). The Global Resolution Agreement required certain "Business Improvements" on the part of Defendants that included, but was not limited to:

> 4. Business Improvements
>
> A. Death Benefits
>
> (i) John Hancock agrees that within one hundred and twenty (120) days following the Effective Date of this Agreement it shall implement policies and procedures for performing a comparison of its insureds under its in force life insurance policies, Annuity Contract owners and annuitants under Annuity Contracts against the SSDI Update File on at least a quarterly basis using comparison criteria reasonably calculated to identify potential matches of its insureds and annuitants.

(Doc. 1, Ex. A pg. 16). Had Defendants implemented those "policies and procedures" as agreed to, then Plaintiff's mother's policy would had been swept up and escheated to Illinois along with the dividend payment. But instead, Defendants wrongfully held on to those funds – the exact scenario the Global Resolution Agreement was meant to eliminate. By the fact that the Global Resolution Agreement was even drafted, and by the fact that Defendants settled with several States individually, including Florida and California, Defendants were aware that their "normal

practices" were ineffective in timely paying or escheating life policy benefits. (Doc. 1, pars. 9-10). Therefore, Defendants' breach of the Global Resolution Agreement and/or default to pre-Global Resolution Agreement practices forms the factual foundation for Plaintiff's claims.

### 4. The Timeline of Life Policy Benefits

Life insurance policy benefits under a Defendants' life policy are rightfully held by the Defendants until the insured passes away. Following the death of an insured there are two general scenarios dependent upon a timely claim by a beneficiary. If within a reasonable amount of time following the death of an insured a claim is made for the policy proceeds, Defendants still rightfully hold on to those funds until that claim followed through to payment. But if no claim is made within a reasonable amount of time following the death of an insured, then it becomes a question of fact as to when Defendants should escheat those funds. The point in time when Defendants should escheat those funds is the same exact point in time that Defendants can no longer rightfully hold those funds.

The primary function of the Global Resolution Agreement was to define by agreement just what is a reasonable amount of time for Defendants to hold on to the benefits of a life insurance policy if no claim was made for those benefits. Pursuant to the Global Resolution Agreement, Defendants were to "on a quarterly basis" check the SSDI, the Social Security Death Index, for the names of any of its insureds. (Doc. 1, Ex. A pg. 16). If the name of an insured appears on the SSDI list, it starts the clock on that reasonable amount of time. Consequently, once the reasonable amount of time has passed and Defendants are still holding onto the funds, they are wrongfully in possession of those funds. Here, a question of fact exists as to whether Defendants held on to the benefits from Plaintiff's mother's life policy after the running of that reasonable time period.

Moreover, pursuant to a reasonable interpretation of the Illinois Uniform Disposition of Unclaimed Property Act ("IUDUPA"), a question of fact exists as to whether that reasonable time period was reduced, making the time period by which Defendants wrongfully held on to those funds even longer.  Specifically, 765 ILCS 1025/3(b) provides: "Moneys otherwise payable according to the records of the corporation are deemed due and payable although the policy or contract has not been surrendered as required."  Therefore, when one part of Defendants' enterprise properly determined the need to escheat Plaintiff's mother's money to the State, it should have triggered all other parts of Defendants' enterprise to escheat as well.  As such, a reasonable inference of the complaint (and one that Plaintiff is entitled to on a Rule 12(b)(6) motion to dismiss) is Defendants were required to escheat the life insurance policy benefits at the same time as they escheated the "demutualization proceeds."

Irrespective of which reasonable time period applies (two years or five years), once that time period lapses Defendants were wrongfully in possession of those funds.  Defendants' wrongful possession of those funds forms the factual predicate for several counts alleged.  Once Defendants should pay or escheat those funds, and upon failure to do so, then Defendants incur liability for Unjust Enrichment (Count II), Conversion (Count III), and/or Breach of Fiduciary Duty (Count IV).

## Argument

### 1.     Standards For Rule 12(b)(6) Motion To Dismiss

When considering a Rule 12(b)(6) motion, the court must accept as true all factual allegations in the plaintiff's complaint and construe all reasonable inferences in favor of the plaintiffs. *Schwartz v. Brodsky,* 265 F.Supp.2d 130, 131 (D. Mass. 2003)(*citing* Fed.R.Civ.P. 12(b)(6);  *Gorski v. New Hampshire Dep't of Corrections,* 290 F.3d 466, 473 (1st Cir.2002);

*Alternative Energy, Inc. v. St. Paul Fire & Marine Ins. Co.,* 267 F.3d 30, 33 (1st Cir.2001); *Estate of Soler v. Rodriguez,* 63 F.3d 45, 53 (1st Cir.1995)). Dismissal is warranted if it is clear no relief could be granted under any set of facts that could be proved consistent with the allegations. *Id.* at 131-32 (*citing Gorski,* 290 F.3d at 473; *Roma Const. Co. v. aRusso,* 96 F.3d 566, 569 (1st Cir.1996)). The allegations must be enough to raise a right to relief above the speculative level and must be enough to "raise a reasonable expectation that discovery will reveal evidence" that supports plaintiffs' claim. *Bell Atlantic Corporation v. Twombly*, 127 S. Ct. 1955, 1965 (2007). That is even if actual proof of the facts is improbable. *D.D.S. Industries, Inc. v. C.T.S., Inc.,* 2012 WL 2178962, *1 (D. Mass. June 13, 2012). Also, on a Rule 12(b)(6) motion, the court may consider public records and other documents referred to in the complaint, without treating the motion as one under Rule 56. *Chatman v. Gentle Dental Center of Waltham,* 973 F.Supp. 228, 231 n. 6 (D. Mass. 1997)(citing *Watterson v. Page,* 987 F.2d 1, 3 (1st Cir.1993)).

### 2. The Global Resolution Agreement

The gravamen of Plaintiff's complaint is Defendants agreed with and made contractual promises to the States of Illinois, Massachusetts and others on how Defendants would handle unclaimed life insurance policy benefits. Those contractual promises were contained in the Global Resolution Agreement and arose from an audit of unclaimed life insurance benefits held by Defendants. Those contractual promises put duties and obligations on Defendants <u>above and beyond</u> the normal claims processes and unclaimed property laws. Defendants move to dismiss Plaintiff's complaint by arguing that Defendants only have to meet their duties and obligations by following those normal claim processes and unclaimed property laws *without* recognizing their additional duties and obligations arising from the Global Resolution Agreement. In fact,

Defendants don't even mention the Global Resolution Agreement in their Motion to Dismiss. (Doc. 10).

Taking true the facts as alleged, and all reasonable inferences therewith, Defendants failure to adhere to the added duties and obligations created by the Global Resolution Agreement warrants relief to Plaintiff and the putative class. Based upon the audit which lead to the Global Resolution Agreement, more than a reasonable expectation exists that discovery will reveal evidence to support Plaintiff's and the class' claims.

### 3. Count I – Plaintiff's Ch. 93A Claim

Count I pled Violation of Massachusetts <u>or alternately</u> Various States Consumer Protection Laws. Defendants argue that Count I should be dismissed because: M.G.L. ch. 93A does not apply to out-of-state residents, Plaintiff failed to make a pre-suit demand, and Defendants actions were proper pursuant to 93A. (Doc. 10, pgs. 9-11). Defendants make no other argument to dismiss Count I. Defendants further argue that Illinois law applies to this case. (Doc. 10, pgs. 4–6, 8-9). The allegations set forth in Count I, in combination with Defendants' argument that Illinois law applies make inescapably clear that Count I based on Illinois' consumer protection law survives. Accordingly, Defendants' Motion to Dismiss Count I should be denied as Illinois consumer protection law applies to Count I.

### 4. Count II – Unjust Enrichment

Defendants claim Plaintiff's unjust enrichment claim is barred because of the existence of the insurance contract, and because Defendants complied with normal pre- Global Resolution Agreement claims settlement practices. Defendants are wrong on both arguments.

Under Illinois law, quasi-contractual relief is available when one party has benefited from the services of another under circumstances in which, according to the dictates of equity and good conscience, he ought not to retain such a benefit, but plaintiff may not pursue a quasi-contractual

claim where there is an enforceable express contract between the parties. *Cromeans, Holloman, Sibert, Inc. v. A.B. Volvo,* 349 F.3d 376 (7th Cir. 2003). Under Illinois law, the existence of an express contract will bar a claim under the implied contract theory only <u>where the two alleged contracts cover the same thing.</u> *Luis Glunz Beer, Inc. v. Martlet Importing Co., Inc.,* 864 F.Supp. 810, 818 (N.D. Ill. 1994)(emphasis added).

There is no contract in this case which deals with the holding of life insurance proceeds after the moment in time when Defendants should have paid or escheated those funds pursuant to the Global Resolution Agreement. In other words, the moment in time when Defendants should have paid or escheated those funds is the moment the insurance contract was over, and therefore the insurance contract cannot be relied upon to protect Defendants from their wrongful retention of those funds. *See Board of Directors v. Western National Bank of Cicero,* 139 Ill.App.3d 542, 547 (1st Dist. 1985)(noting that the general rule is that no quasi-contractual claim can arise when a contract exists between the parties concerning the <u>same subject matter</u> on which the quasi-contractual claim rests.) Since there is no contract for the holding on to proceeds from life insurance policies after the moment in time that those funds should have been paid or escheated pursuant to the Global Resolution Agreement, the Motion to Dismiss should be denied. Defendants should not be entitled to a windfall for holding onto those funds past the moment in time when they were to pay or escheat those funds.

**5.  Count III – Conversion**

Defendants argue Plaintiff's conversion claims fails because under Illinois law a conversion claim cannot be made for the return of money and Plaintiff's claim to the insurance proceeds was conditioned on numerous steps making Plaintiff's claim conditional. Again, both of Defendant's arguments fail.

The defect in Defendants' argument that an Illinois conversion claim cannot be made for money is demonstrated in Defendants' second argument. As conceded in Defendants' second

argument, Plaintiff's claim was not for money but for "insurance proceeds." It is well settled in Illinois that "insurance proceeds" are distinguishable from money and therefore "insurance proceeds" fall outside of the restriction on barring conversion claims for money. *Fonda v. General Cas. Co. of Illinois,* 279 Ill.App.3d 894, 903-05 (1st Dist. 1996).

Regarding Defendants' second argument, based upon the facts alleged, especially Exhibit A to the complaint, under the specific scenario when a beneficiary fails to make a claim, those insurance proceeds are to be escheated to the state. Defendants' argument that Plaintiff failed to make a claim therefore has no merit. Defendants cannot enter into an agreement to escheat policy funds when no claim is made and then, when Defendants fail to escheat those policy funds as required, justify not escheating those policy funds because no claim was made. The terms of the Global Resolution Agreement dispose of Defendants' impermissibly inconsistent argument.

### 6. Count IV – Breach of Fiduciary Duty

Defendants argue that Plaintiff has not pled the existence of a fiduciary duty. However, it is well established that "[a]t common law, fiduciary duties characteristically attach to decisions about managing assets and distributing property to beneficiaries." *Pegram v. Herdrich,* 120 S.Ct. 2143, 2155 (2000). Moreover, at the motion to dismiss stage, Illinois courts are not willing to deny a breach of fiduciary duty claim without the benefit of discovery:

> Plaintiffs do not allege that a fiduciary relationship existed with defendants as a matter of law. Instead, they argue that they trusted defendants and that defendants dominated and influenced the entire relationship. While Illinois courts have been reluctant to find fiduciary relationships in the business context, *Gutfruend,* 658 F.Supp. at 1395; *McErlean v. Union National Bank,* 90 Ill.App.3d 1141, 1148–49, 414 N.E.2d 128, 134, 46 Ill.Dec. 406, 412 (1st Dist.1980); *Carey Elec.,* 74 Ill.App.3d at 238, 392 N.E.2d at 763–64, 30 Ill.Dec. at 108–09, these courts have not foreclosed the finding of such relationships under the appropriate circumstances. *See, e.g., Farmer City State Bank,* 139 Ill.App.3d at 424, 487 N.E.2d at 764, 94 Ill.Dec. at 7 (fiduciary relationship could exist between guarantor and creditor in a particular

> case); *Carey Elec.,* 74 Ill.App.3d at 238, 392 N.E.2d at 764 (fiduciary relationship not foreclosed where businesses linked by contract). *Cf. McCartney,* 8 Ill.2d at 499, 134 N.E.2d at 792 (look at facts and circumstances of particular case to determine if fiduciary relationship exists).
>
> We note that this is a motion to dismiss and the record is undeveloped. Taking all plaintiffs' allegations as true, and viewing reasonable inferences in the light most favorable to plaintiffs, we find that plaintiffs may be able to prove some set of facts, by clear and convincing evidence, that a fiduciary relationship existed. Consequently, we find that plaintiffs could state a claim under Illinois law and deny defendants' motion to dismiss.

*Walker v. Aetna Life Ins. Co.,* 1988 WL 46635, *11 (N.D. Ill. May 3, 1988).

Here, pursuant to the Global Resolution Agreement, a point in time by which Defendants were to pay or escheat life insurance proceeds was agreed to. By not paying or escheating those monies by the end of that time period Defendants were making decisions regarding distributing assets to beneficiaries and thus incurring common law fiduciary duties. In other words, by deciding to hold onto those funds post the time they were to be paid or escheated, and thereby concealing their obligation to pay or escheat those funds, Defendants' incurred fiduciary obligations to those to whom those funds were to be paid.

The complaint in in paragraphs 67 and 68 sets this out in detail:

> 67.   Defendants, by virtue of the policies, contracts or accounts entered into an arrangement whereby for a fee, Defendants were obligated to make pay outs on those policies, contracts or accounts to Plaintiff and the Class.  Defendants are fiduciaries to the Plaintiff and the Class based on their relationship with Plaintiff and the Class. Defendants are fiduciaries by reason of their holding of death benefits (funds) for their policy holders' beneficiaries, heirs, executors and estates.  Defendants are fiduciaries by reason of their holding unclaimed property.  Defendants are fiduciaries by reason of their exercising the right to control claims within the insureds' policies (such as when or if claims are even made).  Defendants are fiduciaries by reason of the trust and confidence placed in Defendants (and Defendants' knowledge of the placing of that trust and confidence) for Defendants' holding of proceeds due pursuant to death benefits, policies, contracts or accounts.  By and through operation of this relationship, Defendants acted as a fiduciary to Plaintiff and the Class.
>
> 68.   Defendants breached one or more of those fiduciary duties by, including but not limited to: holding onto death benefits (funds) and/or unclaimed property, failing to

> notify Plaintiff and the Class Defendant were so holding death benefits (funds) and/or unclaimed property, using the death benefits (funds) and/or unclaimed property for their own benefit, earning and retaining interest on the death benefits (funds) and/or unclaimed property, and charging administrative fees to hold on to the death benefits (funds) and/or unclaimed property without undertaking reasonable efforts to locate the Plaintiff and the Class so that they may receive the death benefits (funds) and/or unclaimed property eliminating the need for the ongoing administrative fees.

(Doc. 1). Allegations which, taken as true they must be pursuant to a Rule 12(b)(6) motion, establish more than just a speculative possibility that a fiduciary duty was created when Defendants failed to escheat policy funds to the State.

Defendants' argument to dismiss Count IV rests solely upon the defense that Defendants adhered to pre-Global Resolution Agreement normal claim processes and unclaimed property law. (Doc. 10, pg. 16). Plaintiffs' complaint, and all reasonable inferences made therefrom, alleges the Global Resolution Agreement modified those normal claim processes and Defendants' obligations pursuant to those unclaimed property laws. Plaintiff's allegations that Defendants breached the Global Resolution Agreement then establishes a valid claim by which, if proved, Plaintiff and the putative class would be entitled to relief.

### 7. Count V – Declaratory Judgment

Defendants argue the Declaratory Judgment count should be dismissed because Plaintiff seeks no future relief. (Doc. 10, pg. 17). Further, Defendants defend against the Declaratory Judgment by arguing Plaintiff is alleging Defendants were "obligated to initiate the claims settlement process." (*Id.*).

On the contrary, Plaintiff alleges Defendants incurred duties and obligations to Plaintiff and the putative class by reason of the Global Resolution Agreement. (Doc. 1, par. 78). Plaintiff further alleges Defendants are in breach of the Global Resolution Agreement in that they are holding onto money rightfully owned by the putative Class. (Doc. 1, par. 82). Plaintiff and the

putative class seek declarations for Defendants to be prohibited from wrongfully holding onto these funds on a go forward basis. (Doc. 1, par. 83). The duties and obligations of Defendants pursuant to the Global Resolution Agreement, especially to the extent those duties and obligations affect the putative Class, forms the proper basis for a declaratory judgment claim.

"The purpose of declaratory judgment under 28 U.S.C. § 2201, 'is to allow the parties to understand their rights and liabilities so that they can adjust their future action to avoid unnecessary damages.' *Rockwell International Corp. v. IU International Corp.,* 702 F.Supp. 1384, 1388 (1988) (citing *A C and S Inc. v. Aetna Casualty & Surety Co.,* 666 F.2d 819, 823 (3rd Cir.1981)); *see also* 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure, § 2751 at 570 (2nd ed.1983) (declaratory judgment permits actual controversies to be settled before they ripen into violations of the law)." *Sprint Spectrum L.P. v. Town of Easton,* 982 F.Supp. 47, 52 (D. Mass. 1997). Here, that purpose is satisfied as Defendants conduct pursuant to the Global Settlement Agreement affects the future rights of the putative class.

## Conclusion

Taken as true, the allegations in the complaint set forth facts which could prove Plaintiff and the putative class are entitled to relief. The gravamen of Plaintiff's complaint is Defendants incurred duties and obligations <u>above and beyond</u> the normal claims processes and unclaimed property laws from the Global Resolution Agreement. Defendants move to dismiss on the basis Defendants have met their duties and obligations by following the normal claim processes and unclaimed property laws *without* recognizing their additional duties and obligations arising from the Global Resolution Agreement. By not adhering to their duties and obligations arising from the Global Resolution Agreement, Defendants wrongfully held on to

money owed to Plaintiff and the class, a holding that results in Defendants' liability under one or more of the claims in the complaint.

Defendants' Motion to Dismiss should be denied.

WHEREFORE, Plaintiff, RICHARD FEINGOLD, on behalf of himself and all other persons similarly situated, prays this Court enter an Order denying Defendants' motion to dismiss, and for all other relief deemed necessary.

DATED:  March 12, 2013  RICHARD FEINGOLD, individually and
as the representative of a class of
similarly-situated persons


By:  s/Brian J. Wanca
　　　One of Plaintiff's Attorneys


Brian J. Wanca
ANDERSON + WANCA
3701 Algonquin Road, Suite 760
Rolling Meadows, IL  60008
Telephone:  847-368-1500
Fax:  847-368-1501


Alan Cantor
Swartz & Swartz
10 Marshall Street
Boston, MA  02108
Telephone:  617-742-1900
Fax:  617-367-7193

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY THAT ON March 12, 2013, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the email addresses denoted on the Electronic Mail Notice List.

s/Brian J. Wanca