IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

Case No. 1:13-CV-10185

RICHARD FEINGOLD, individually and as a representative of a class of similarly-situated persons,

      Plaintiffs,

v.

JOHN HANCOCK LIFE INSURANCE COMPANY (USA) and JOHN HANCOCK LIFE & HEALTH INSURANCE COMPANY,

      Defendants.

---

**DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF THEIR
MOTION TO DISMISS THE COMPLAINT**

**LEAVE TO FILE GRANTED ON MARCH 29, 2013**

---

**Table of Contents**

PRELIMINARY STATEMENT ......................................................................................... 1

ARGUMENT ..................................................................................................................... 5

   1.    Plaintiff's Chapter 93A Claim and Any Similar Claim Under the Illinois
   Consumer Protection Law Should Be Dismissed. .......................................................... 5

   2.    The Complaint's Common Law Claims Should Be Dismissed............................. 7

      A.   Plaintiff's Unjust Enrichment Claim Should Be Dismissed in Light of
      Adequate Legal Remedies and for Failure to Plead Either an
      "Impoverishment" or that John Hancock's Actions Lacked Justification. ................. 7

      B.   Plaintiff's Conversion Claim Fails as a Demand for a Conditional and
      General Debt. ............................................................................................................. 8

      C.   Plaintiff's Claim for Breach of Fiduciary Duty Fails Because John
      Hancock Owes No Fiduciary Duty and Plaintiff Does Not Allege a Breach of
      Any Purported Duty. .................................................................................................. 9

      D.   The Court Should Exercise Its Discretion to Decline to Entertain
      Plaintiff's Declaratory Judgment Count. ................................................................. 11

CONCLUSION................................................................................................................. 12

**Table of Authorities**

CASES

*Andrews v. Nationwide Mutual Insurance Co.*,
  No. 97891, 2012 WL 5289946 (Ohio Ct. App. Oct. 25, 2012) ................................................5

*Ball Corp. v. Bohlin Building Corp.*,
  543 N.E. 2d 106 (Ill. App. Ct. 1989) ........................................................................................4

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007)................................................................................................................3, 7

*Fiore v. First American Title Insurance Co.*,
  No. 05-CV-474-DRH, 2006 U.S. Dist. LEXIS 60952 (S.D. Ill. Aug. 28, 2006) .....................6

*Fonda v. General Casualty Co. of Illinois*,
  665 N.E.2d 439 (Ill. Ct. App. 1996) ......................................................................................8, 9

*Greenberger v. GEICO General Insurance Co.*,
  631 F.3d 392 (7th Cir. 2011) ....................................................................................................6

*In re Thebus,*
  483 N.E.2d 1258 (Ill. 1985) .....................................................................................................8

*Laguer v. Onewest Bank, FSB.*,
  No. MICV 2010-03353, 2013 WL 831055 (Mass. Super. Feb. 27, 2013) ...............................4

*Marini v. Dragados USA, Inc.*,
  Civ. A. No. 11–11316, 2012 WL 4023674 (D. Mass. Sept. 11, 2012)....................................3

*Martis v. Grinnell Mutual Reinsurance Co.*,
  905 N.E.2d 920 (2009)...............................................................................................................4

*Mihos v. Swift*,
  358 F.3d 91 (1st Cir. 2004)........................................................................................................3

*North American Catholic Educational Programming Foundation, Inc. v.*
  *Cardinale*,
  567 F.3d 8 (1st Cir. 2009)..........................................................................................................7

*Pegram v. Herdrich*,
  530 U.S. 211 (2000)...................................................................................................................9

*Phillips v. Prudential Insurance Company of America*,
No. 11-cv-0058, 2011 WL 5915148 (S.D. Ill. Nov. 28, 2011).................................................9

*Sprint Spectrum L.P. v. Town of Easton*,
982 F. Supp. 47 (D. Mass. 1997) ......................................................................................11

*Swanson v. Bank of America, N.A.*,
566 F. Supp. 2d 821 (N.D. Ill. 2008) .................................................................................6

*Wilfong v. L.J. Dodd Construction*,
930 N.E.2d 511 (Ill. 2010) ................................................................................................4

STATUTES

215 ILCS 5/224(1)(j) ...............................................................................................................7

765 ILCS 1025/3(b) .................................................................................................................2

Ala. Code § 27-15-53 (2012) .................................................................................................10

Ky. Rev. Stat. Ann. § 304.15-420 (2012) ..............................................................................10

N.Y. Ins. L. § 3213-a(f) (2012)..............................................................................................10

Ohio Rev.Code Ann. 3915.05(K) .............................................................................................5

OTHER AUTHORITIES

Fed. R. Civ. P. 9(b) ..............................................................................................................6, 7

Restatement Second of Contracts § 302 ...............................................................................10

John Hancock respectfully submits this reply to Plaintiff's Response in

Opposition to Defendants' Motion to Dismiss the Complaint (hereinafter "Plaintiff's

Opposition" or "Pl. Opp.").[1]

## PRELIMINARY STATEMENT

Plaintiff's Opposition seeks to impose obligations that are inconsistent with

Illinois insurance and unclaimed property laws.  Plaintiff admits that the Complaint goes

"above and beyond the normal claims processes and unclaimed property laws" by relying

on provisions of the Global Resolution Agreement ("GRA") – a regulatory settlement

between John Hancock and various states.  Pl. Opp. at 6 (emphasis in original).

However, plaintiff cannot sue for any alleged breach of GRA, nor does the invocation of

the GRA cure any of the flaws in the claims alleged in the Complaint.

Plaintiff does not even attempt to dispute the well-established principles of

Illinois law that are fatal to the Complaint:  life insurance proceeds are payable only upon

receipt of "due proof of death" from a beneficiary; an insurer's liability under a policy is

conditioned upon presentation of a claim to benefits; life insurance proceeds become

"unclaimed funds" five years after the moneys became "due and payable"; by contrast,

unclaimed demutualization proceeds are subject to escheatment two years after the date

of the demutualization.  JH Br. at 4-6.

---

[1]   This reply uses the same defined terms and abbreviations as Defendants'
Memorandum in Support of Their Motion to Dismiss the Complaint, filed Feb. 26,
2013 ("JH Br.").

Plaintiff nonetheless repeatedly alleges requirements that contradict these settled

principles.  For example:

- Plaintiff asserts that "Defendants were required to escheat the life insurance policy benefits at the same time as they escheated the 'demutualization proceeds.'"  Pl. Opp. at 5.

To the contrary, Illinois law prescribes entirely different triggering events and time

periods for escheating life insurance proceeds as opposed to demutualization proceeds.

JH Br. at 6.

- Plaintiff asserts that, "when one part of Defendants' enterprise properly determined the need to escheat Plaintiff's mother's money to the State, it should have triggered all other parts of Defendants' enterprise to escheat as well."  Pl. Br. at 5.

Again, Illinois law prescribes entirely different triggering events and time periods for

escheating demutualization proceeds as opposed to life insurance proceeds.  JH Br. at 6.

- Plaintiff asserts that, "if no claim is made within a reasonable amount of time following the death of the insured, then it becomes a question of fact as to when Defendants should escheat those funds."  Pl. Opp. at 4.

To the contrary, it is a matter of settled law that -- in the absence of a claim that includes

"proof of the death of the insured," 765 ILCS 1025/3(b) -- John Hancock had no

obligation to escheat life insurance proceeds unless and until the insured had attained the

applicable limiting age.  JH Br. at 6.[2]

---

[2]   The "limiting age" is the age at which an insurance company presumes that a person is deceased, as determined by the limiting age under the applicable mortality table. *See* 765 ILCS 1025/3(b); IRS Internal Revenue Manual, Part 4, Chapter 42, Section 4.42.4.6.1.4 (05-29-2002), http://www.irs.gov/irm/part4/irm_04-042-004.html (equating "when the insured attains the terminal age of the mortality table" with "the age by which all insured individuals are assumed to have died").

Plaintiff's Opposition is based *not* on "normal claim processes and unclaimed property laws." Pl. Br. at 6. Rather, plaintiff concedes that the "gravamen" of his Complaint relies on "additional duties and obligations arising from" the GRA (*id.*) – a regulatory settlement agreement attached as Exhibit A to the Complaint that became effective June 1, 2011. Compl. Ex. A § 2.A. While plaintiff admits that promises in the GRA go "above and beyond the normal claim processes and unclaimed property laws" (Pl. Br. at 6 (emphasis in original)), he claims that John Hancock's alleged "failure to adhere to the added duties and obligations" warrants relief. *Id.* at 7.

While plaintiff has no right of action for breach of a regulatory settlement, the Complaint did not even allege any violation of the GRA.[3] Plaintiff's arguments concerning the GRA are invalid for this reason alone. *See Marini v. Dragados USA, Inc.*, Civ. A. No. 11–11316, 2012 WL 4023674, at*1 (D. Mass. Sept. 11, 2012) (in response to plaintiff's new claim raised for the first time in response to the motion to dismiss, "courts generally only consider those facts alleged in the complaint itself") (citing *Mihos v. Swift*, 358 F.3d 91, 99 (1st Cir. 2004) ("When a motion to dismiss is based on the complaint…the facts alleged in the complaint control.")). Nor does the Complaint contain any factual allegations that are "enough to raise a right to relief above the speculative level" under the GRA. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

---

[3]   The Complaint alleged that defendants had entered into the GRA and also alleged that entering into the GRA did not "shield" defendants from liability to damages. Compl. ¶¶ 9, 11.

In any event, plaintiff's belated assertion of an alleged violation of the GRA cannot salvage the Complaint. The GRA is an agreement between John Hancock and various signatory states. Plaintiff, as a private individual who is not a party to the agreement, may not enforce it. *See Wilfong v. L.J. Dodd Const.*, 930 N.E.2d 511, 524 (Ill. 2010) ("An individual who is not a party to a contract may enforce the contract only where the contracting parties intentionally entered into the contract for the individual's direct benefit.").[4] An intention to permit third-party beneficiaries to enforce a contract "must be shown by an express provision in the contract identifying the third-party beneficiary by name or by description of a class to which the third party belongs." *Martis v. Grinnell Mutual Reinsurance Co.*, 905 N.E.2d 920, 924 (2009) ("There is a strong presumption that the parties to a contract intend that the contract's provisions apply only to them, and not to third parties"). The contract's language must show that "the contract was made for the direct, not merely incidental, benefit of the third person." *Id.* The Complaint contains no allegation that Plaintiffs or members of the putative class were intended beneficiaries of the contract, and the GRA contains no such provision. Neither plaintiff nor members of the putative class can enforce any GRA obligations against John Hancock. *See Ball Corp. v. Bohlin Bldg. Corp.*, 543 N.E. 2d 106, 108 (Ill.

---

[4]     *See Laguer v. Onewest Bank, FSB.*, No. MICV 2010-03353, 2013 WL 831055 (Mass. Super. Feb. 27, 2013) (citing cases, and noting that "as a general proposition, public citizens are not intended third-party beneficiaries to government contracts despite the fact that such contracts are usually intended to benefit the public in some way.").

App. Ct. 1989) (holding that the unequivocal language of the contract sought to impose

obligations and benefits solely between the parties to the contract itself.).

Moreover, precisely because the GRA goes above and beyond any requirements

of existing law, it does not change the legal principles that apply and preclude plaintiff's

claims.  The Ohio Court of Appeals recently invoked the Ohio Insurance Code to reject a

claim that a life insurance company should be obligated to periodically check the Social

Security Administration's Death Master file ("DMF") – the same allegation plaintiff now

makes in his opposition.  Pl. Opp. at 4.  *See Andrews v. Nationwide Mut. Ins. Co.*, No.

97891, 2012 WL 5289946, at 4-5 (Ohio Ct. App. Oct. 25, 2012).  Like Illinois law, the

Ohio Insurance Code requires all life insurance policies to be payable "upon receipt of

due proof of death."  Ohio Rev. Code Ann. 3915.05(K).  In affirming the dismissal of a

complaint, the court in *Andrews* held that "a finding obligating [the life insurer] to solicit

or gather information pertaining to an insured's death would be contrary to the terms

contained in the insurance policy."  2012 WL 5289946, at *4.

## ARGUMENT[5]

1.      **Plaintiff's Chapter 93A Claim and Any Similar Claim Under the Illinois
        Consumer Protection Law Should Be Dismissed.**

Count I of the Complaint repeatedly invokes the Massachusetts Regulation of

Business Practices for Consumer Protection statute, Chapter 93A.  Compl. ¶¶ 46-49.  Yet,

in response to John Hancock's motion to dismiss, plaintiff does not dispute that the claim

---

[5]     Throughout the Opposition, Plaintiff relies upon citations to Illinois law, effectively
        conceding John Hancock's position on which state's law should apply.  JH Br. at 7-
        8.

fails under Massachusetts law. Instead, plaintiff makes an alternative allegation that John

Hancock has violated Illinois consumer protection law. Pl. Opp. at 7. However, just as

plaintiff failed to state a claim under Massachusetts law, the Complaint also fails to state

a claim under Illinois law.

John Hancock has already set forth the reasons why no claim arises under

Massachusetts law. JH Br. at 10-11. Similarly, no claim arises under the Illinois

Consumer Fraud Act ("ICFA") based on John Hancock's following settled law. *See*

*Swanson v. Bank of Am., N.A.,* 566 F. Supp. 2d 821, 828 (N.D. Ill. 2008) (ICFA does not

prohibit conduct "specifically authorized by laws administered by any regulatory body …

[or] conduct in compliance with the orders or rules of or a statute administered by a

Federal, state or local governmental agency."); *see also Fiore v. First Am. Title Ins. Co.*,

No. 05-CV-474-DRH, 2006 U.S. Dist. LEXIS 60952, at * 9-11 (S.D. Ill. Aug. 28, 2006).

Not only do John Hancock's practices fully satisfy the requirements of Illinois insurance

and unclaimed property laws, but the Complaint fails even to allege any violation of

those laws. JH Br. at 4-6. Thus, Plaintiff's claim under either the Illinois or

Massachusetts consumer laws must fail.

Plaintiff has also failed to meet the requirements of Rule 9(b) of the Federal Rules

of Civil Procedure. A complaint alleging a violation of the Illinois consumer fraud law

must be pled with the same particularity and specificity as that required under common

law fraud. *Greenberger v. GEICO Gen. Ins. Co.*, 631 F.3d 392, 399 (7th Cir. 2011)

(noting that ICFA claims are subject to the heightened pleading standards of Fed. R. Civ.

P. 9(b)). Not only are plaintiff's allegations pleaded in only the vaguest of terms, but the

Complaint fails even to mention the elements of an ICFA claim.  As a result, the

Complaint fails to satisfy *Twombly*, much less Rule 9(b)'s particularity requirement.

*See., e.g., N. Am. Catholic Educ. Programming Found., Inc. v. Cardinale*, 567 F.3d 8, 14

(1st Cir. 2009).

**2.      The Complaint's Common Law Claims Should Be Dismissed.**

**A.      Plaintiff's Unjust Enrichment Claim Should Be Dismissed in Light of Adequate Legal Remedies and for Failure to Plead Either an "Impoverishment" or that John Hancock's Actions Lacked Justification.**

Plaintiff argues that he may assert an unjust enrichment claim against John

Hancock because the life insurance contract does not "cover the same thing" as the quasi-

contract claim that he seeks to assert.  Pl. Opp. at 8.  Plaintiff asserts that no contract

"deals with the holding of life insurance proceeds after the moment of time when

Defendants should have paid or escheated those funds pursuant to the [GRA]."  *Id*.  This

argument fails for several reasons.

First, Illinois law *mandates* that insurance policies contain a provision requiring

that policy proceeds may not be settled until "receipt of due proof of death," and the

policy at issue contained such a clause.  *See* 215 ILCS 5/224(1)(j); 215 ILCS 5/229(1)(k);

Carli Aff. Ex. A ("The Company will pay the amount of Insurance due hereunder to the

beneficiary … upon receipt of due proof … of the death of the Insured…").  The life

insurance policy at issue thus specifically contemplated that John Hancock would hold

life insurance proceeds until 2012, when plaintiff submitted due proof of death.  In any

event, plaintiff's relationship with John Hancock is governed by contract – his mother's

life insurance policy – so no claim for unjust enrichment exists.  JH Br. at 12.

Moreover, there is no allegation that there was any actual detriment to Plaintiff,

nor any facts demonstrating that proceeds owed to plaintiff were actually withheld.  *Id.* at

13.  Finally, the circumstances alleged in the complaint are plainly not "unjust" because

at all times John Hancock's actions were in conformity with Illinois law.  *Id.*

### B.      Plaintiff's Conversion Claim Fails as a Demand for a Conditional and General Debt.

The Complaint's conversion claim fails because plaintiff's right to the proceeds of

the insurance policy was conditional upon his making a claim.  JH Br. at 5.  The essence

of conversion is the wrongful deprivation of one who has a right to the immediate

possession of the object unlawfully held.  *In re Thebus,* 483 N.E.2d 1258, 1260 (Ill.

1985); *cf. Fonda v. Gen. Cas. Co. of Ill.*, 665 N.E.2d 439, 442, 446 (Ill. Ct. App. 1996)

(plaintiff had "automatic right" to proceeds from an insurance policy as a "loss payee,"

and conversion claim arose when insurer actually delivered specific proceeds to a third

party, rather than plaintiff).  Putting aside the fact that the GRA did not create any

enforceable obligations as to plaintiff, to the extent any party had a "right to [] immediate

possession" of the insurance proceeds as a result of the GRA, it was the state and not

plaintiff who was entitled to the funds.  *See* Pl. Opp. at 9 ("[u]nder the specific scenario

when a beneficiary fails to make a claim, those insurance proceeds are to be escheated to

the state.").  In the absence of a claim providing notice and due proof of death, plaintiff

had no right to the funds.

Plaintiff's attempt to draw a distinction between insurance proceeds and a general debt (Pl. Opp. at 9) must also fail.  In *Fonda*, a secured creditor had an absolute interest in specific insurance proceeds that had already been paid by the insurance company to the beneficiary.  *See Fonda*, 665 N.E.2d at 444  (defining "proceeds" as "Insurance *payable* by reason of loss or damage to the collateral" (emphasis added)).  Under Illinois law, life insurance proceeds are not *payable* until a claim is made.  JH Br. at 5.  Thus, they remain a general debt, and a conversion claim cannot stand.  *See id.* at 14-15.

### C.    Plaintiff's Claim for Breach of Fiduciary Duty Fails Because John Hancock Owes No Fiduciary Duty and Plaintiff Does Not Allege a Breach of Any Purported Duty.

Plaintiff cites no authority indicating that a fiduciary obligation may be created under the circumstances alleged in the Complaint and fails to address authority to the contrary.  *See Phillips v. Prudential Ins. Co. of Am.*, No. 11-cv-0058, 2011 WL 5915148, at *5 (S.D. Ill. Nov. 28, 2011) ("applying ['trustee status'] to an insurer/insured relationship would transform an insurance company into a trustee in every situation in which it pays benefits."); *cf.* Pl. Opp. at 9 (citing *Pegram v. Herdrich*, 530 U.S. 211, 231 (2000) (discussing common law fiduciary obligations of a *trustee*)).

Plaintiff cannot dispute that under Illinois law he has no claim for breach of fiduciary duty.  Instead, in an attempt to circumvent the settled law under which John Hancock's claim-settlement practices are entirely lawful, plaintiff argues that as a result of the GRA, at an unspecified time, an obligation arose for John Hancock to escheat money to the state, and failure to do so created a fiduciary duty running between John Hancock and plaintiff.  Pl. Opp. at 10-11 ("the [GRA] modified … normal claim

9

processes and Defendant's obligations pursuant to those unclaimed property laws").

However, the Complaint fails to allege that the GRA modified any duties between John

Hancock and plaintiff, and in any event the GRA creates no additional duties running

from John Hancock to plaintiffs.  *See* Restatement Second of Contracts § 302 cmt. e

(1981) ("unless the third person is an intended beneficiary … no duty to him is created").

       By arguing that a fiduciary duty arose here, plaintiff is asking this Court to create

a broadly applicable obligation that does not exist under Illinois law.  However, "[t]he

only legitimate function of the courts is to declare and enforce the law as enacted by the

legislature, to interpret the language used by the legislature where it requires

interpretation, and not to annex new provisions or substitute different ones, or read into a

statute exceptions, limitations, or conditions which depart from its plain meaning."

*Belfield v. Coop*, 134 N.E. 2d 249, 256 (Ill. 1956).  To the extent that states wish to

impose an obligation to search the DMF, their legislatures are free to do so.  In fact,

recognizing that their laws did not create an obligation to search the DMF, four states

have recently amended their Insurance Codes expressly to create an obligation to do so.[6]

Neither Illinois nor Massachusetts has followed suit.

---

[6]    *See, e.g.*, N.Y. Ins. L. § 3213-a(f) (2012) ("Every insurer shall establish procedures to reasonably confirm the death of an insured or account holder and begin to locate beneficiaries within ninety days after the identification of a potential match [against the Social Security Death Master File]. . . . Nothing herein shall prevent an insurer from requiring satisfactory proof of loss, such as a death certificate, for the purpose of verifying the death of the insured."); Md. Code. Ann., Ins. § 16-118 (2012); Ky. Rev. Stat. Ann. § 304.15-420 (2012); Ala. Code § 27-15-53 (2012).

**D.    The Court Should Exercise Its Discretion to Decline to Entertain Plaintiff's Declaratory Judgment Count.**

Plaintiff has offered no legitimate reason why the Court should entertain the proposed declarations.  Plaintiff's declaratory judgment claims should be dismissed because they seek relief to address only whether John Hancock's past conduct violated the law.  *See* JH Br. at 16-18; *Sprint Spectrum L.P. v. Town of Easton*, 982 F. Supp. 47, 52 (D. Mass. 1997) (dismissing request for declaratory judgment where "Plaintiff is seeking declarations that Defendant's past conduct…violated state or federal law").  Plaintiff argues that his claims are appropriate because John Hancock's "conduct pursuant to the [GRA] affects the future rights of the putative class" (Pl. Opp. at 11-12), but none of plaintiff's proposed declarations are addressed to the GRA, and furthermore, as a matter of law, plaintiff has no rights under the GRA.  The rights of plaintiff and the putative class are circumscribed by Illinois law, with which John Hancock's actions were and continue to be in full conformity.  The declarations proposed in the Complaint will be determined as a matter of course in addressing Plaintiff's other claims.  *See* JH Br. at 16-18.  Thus, the Complaint's declaratory judgment claims should be dismissed.

11

## CONCLUSION

For the foregoing reasons, John Hancock's motion to dismiss the Complaint with prejudice should be granted.

/s/ Myles W. McDonough
Myles W. McDonough, BBO# 547211
Christopher M. Reilly, BBO# 674041
SLOANE AND WALSH, LLP
Three Center Plaza, 8th Floor
Boston, Massachusetts 02108
Tel: 617-523-6010

Edwin G. Schallert
DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, New York 10022
Tel: 212-909-6000

Date:  March 29, 2013

12

## CERTIFICATE OF SERVICE

I, Myles W. McDonough, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered participants.

/s/   Myles W. McDonough
Myles W. McDonough

13