UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| RICHARD FEINGOLD, individually and as a representative of a class of similarly-situated persons, | * * * * | |
| Plaintiff, | * * | |
| v. | * * | Civil Action No. 13-10185-JLT |
| JOHN HANCOCK LIFE INSURANCE COMPANY (USA) and JOHN HANCOCK LIFE & HEALTH INSURANCE COMPANY, | * * * * | |
| Defendants. | * * | |

MEMORANDUM

August 20, 2013

TAURO, J.

I.      Introduction

        This suit arises from the retention of life insurance policy proceeds by Defendants John

Hancock Life Insurance Company (USA) and John Hancock Life & Health Insurance Company

(together "John Hancock"). Plaintiff Richard Feingold challenges John Hancock's practice of

holding policy proceeds until receiving proof of the insured's death. John Hancock has moved to

dismiss the complaint. For the reasons below, this Motion to Dismiss [#9] is ALLOWED.

II.     Factual Background[1]

---

[1] The court takes the facts from Feingold's Class Action Complaint [#1] and presents them in the light most favorable to Feingold.

1

In 1945, Feingold's mother, an Illinois resident, purchased a life insurance policy from John Hancock. She passed away in 2006. Feingold knew nothing of the policy but learned in late 2010 that John Hancock might owe his mother money. The Illinois Treasurer maintains a website of unclaimed funds called "CashDash." A visit to the site prompted Feingold to investigate further, and he learned that John Hancock had escheated $459 in dividends. Feingold was told that the $459 represented the full amount owed to his mother. He received the funds from the State in December 2011.[2]

In January 2012, Feingold contacted John Hancock directly to request information on any life insurance policies his mother may have had. John Hancock initially responded that his mother had not purchased a policy but later located it and sent Feingold forms to complete. Feingold returned the requested information. He also continued to ask for a copy of the life insurance policy, which John Hancock refused to provide.[3]

On June 1, 2013, John Hancock sent Feingold a check for $1,349.71. It did not explain the money or why the money had not escheated to Illinois with the dividends. Feingold never received a copy of the insurance policy or any further explanation.[4]

Feingold claims that John Hancock acted unreasonably in failing to investigate whether his mother had died. According to Feingold, John Hancock had several resources that could provide this information, including the Death Master File of the Social Security Administration. Feingold alleges that John Hancock regularly uses this database to determine when it may stop paying

---

[2] Compl. ¶¶ 19-22.

[3] Compl. ¶¶ 23-25.

[4] Compl. ¶¶ 26-27.

benefits but never to determine when it must start.[5] Consequently, he claims, John Hancock can collect and use the interest on unclaimed policy proceeds to its own benefit. Feingold indicates that numerous states have opened investigations of this practice, prompting John Hancock to enter a Global Resolution Agreement ("GRA") with thirty states and the District of Columbia.[6]

Feingold initiated this suit in January 2013 to challenge John Hancock's practice of retaining insurance policy proceeds until a policy beneficiary submits a claim. He brings five counts against John Hancock: 1) "violation of Massachusetts Consumer Protection Act; alternatively, violation of various state consumer protection laws;" 2) unjust enrichment; 3) conversion; 4) breach of fiduciary duty; and 5) declaratory relief.

III.    Discussion

    A.    Standard of Review

To survive a motion to dismiss under Rule 12(b)(6), a complaint must include factual allegations that demonstrate a plausible claim for relief.[7] The "court must 'take all factual allegations as true and draw all reasonable inferences in favor of the plaintiff.' "[8] Nevertheless, the court need not accept the plaintiff's legal conclusions, and the plaintiff must provide more than "labels and conclusions or a formulaic recitation of the elements of a cause of action."[9]

---

[5] Compl. ¶¶ 2-3.

[6] Compl. ¶¶ 7, 9.

[7] Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555-58 (2007).

[8] Pettengill v. Curtis, 584 F. Supp. 2d 348, 362 (D. Mass. 2008) (quoting Rodriguez-Ortiz v. Margo Caribe, Inc., 490 F.3d 92, 96 (1st Cir. 2007) (emphasis omitted)).

[9] Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal citations and quotation marks omitted).

Ordinarily, the court may not consider materials outside the complaint without converting the motion to a motion for summary judgment.[10] "There is, however, a narrow exception 'for documents the authenticity of which are not disputed by the parties; for official public records; for documents central to plaintiffs' claim; or for documents sufficiently referred to in the complaint.'"[11] Here, John Hancock has provided a copy of the likely form of the insurance policy purchased by Feingold's mother.[12] Because this document is central to his claims, and Feingold has not disputed its authenticity, the court may properly consider it.

B.     Overview of Applicable Law

Before turning to the specific claims advanced by Feingold, the court briefly reviews some governing principles of insurance law, contract enforcement, and choice of law.

First, the parties have some disagreement as to whether the court should apply Massachusetts or Illinois law. Feingold's complaint argues for Massachusetts law, though in opposition to John Hancock's motion to dismiss, which argues for Illinois law, he cites primarily to Illinois cases. With the exception of the Massachusetts Consumer Protection Act claim, discussed in greater detail below, the court need not resolve this dispute. Massachusetts and

---

[10] See Gulf Coast Bank & Trust Co. v. Reder, 355 F.3d 35, 38 (1st Cir. 2004); Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993).

[11] Alt. Energy, Inc. v. St. Paul Fire & Marine Ins. Co., 267 F.3d 30, 33 (1st Cir. 2001) (quoting Watterson, 987 F.2d at 3).

[12] See Carli Aff. Ex. A [#11]. John Hancock did not retain an actual copy of the individual policy but kept a copy of the policy form and the life insurance application completed by Feingold's mother. Carli Aff. ¶¶ 3-5.

Illinois law are essentially the same in this case.[13]

Second, this case depends on some established principles of insurance law. Ordinarily, the provisions of an insurance policy control.[14] An insurance policy may require a beneficiary to furnish "due proof of loss," in this case proof of death, before paying policy proceeds.[15] The proof of loss allows the insurer to determine whether the claim falls within the policy and to take timely further action.[16] Indeed, under both the Illinois and Massachusetts consumer protection statutes, an insurance company may be held liable for committing an unfair practice only if it fails to affirm or deny coverage "after proof of loss statements have been completed."[17] Accordingly, John Hancock's practice of requiring the life insurance policy beneficiary to submit proof of death before payment comports with both Massachusetts and Illinois law.

---

[13] See Fratus v. Republic W. Ins. Co., 147 F.3d 25, 28 (1st Cir. 1998) ("A federal court sitting in diversity need not make a finding regarding which state's law is to be applied where the case's resolution would be identical under either state's law.").

[14] Downing v. Wolverine Ins. Co., 210 N.E.2d 603, 605-06 (Ill. App. Ct. 1965).

[15] Am. Country Ins. Co. v. Bruhn, 682 N.E.2d 366, 370 (Ill. App. Ct. 1997) ("The duty to provide notice is a reasonable requirement in an insurance policy."); see Minh Tu v. Mut. Life Ins. Co. of N.Y., 136 F.3d 77, 79-80 (1st Cir. 1998); Howe v. Nat'l Life Ins. Co., 72 N.E.2d 425, 426-27 (Mass. 1947).

[16] Barrington Consol. High Sch. v. Am. Ins. Co., 319 N.E.2d 25, 27 (Ill. 1974) (explaining that a notice provision "affords the insurer an opportunity to make a timely and thorough investigation"); see Minh Tu, 136 F.3d at 79 ("Due proof is 'the proof furnished to the insurer [that] shows on the whole that the claim is of a class within the protection of the policy, so that if the proofs should be accepted as true the insurer reasonably might pay the claim.' " (alterations in original) (quoting Washington v. Metro. Life Ins. Co., 363 N.E.2d 683, 685 (Mass. 1977) (internal quotation marks omitted); Howe, 72 N.E.2d at 427 ("The purpose of furnishing the defendant with due proof is to enable it to form an intelligent estimate as to whether the death came within the terms of the policy.").

[17] 215 Ill. Comp. Stat. 5/154.6 (emphasis added); Mass. Gen. Laws ch. 176D, § 3.

Finally, Feingold cannot rely on his belated argument that the GRA altered John Hancock's obligations under established law. For one thing, Feingold did not raise this argument in his complaint.[18] For another, Feingold cannot enforce the terms of a contract to which he is not a party.[19] The GRA is between John Hancock and the States, and nothing suggests that they intended Feingold as a third party beneficiary. Feingold's reliance on the GRA does not pass muster.

       C.       <u>Feingold's Claims</u>

              i.       <u>Violation of Consumer Protection Statutes</u>

Feingold alleges a violation of Mass. Gen. Laws ch. 93A or, in the alternative, "various state consumer protection laws." He claims that John Hancock deceived him in its handling of unclaimed policy proceeds, which constituted an unfair or deceptive practice. John Hancock counters that Feingold cannot assert a claim under Massachusetts law because Illinois law applies and the alleged harm occurred in Illinois.

Massachusetts generally applies "the substantive law of the state with the most significant relationship to the transaction or occurrence and to the parties."[20] It takes a functional approach to choice of law questions, relying heavily, though not exclusively, on the Restatement (Second)

---

[18] <u>Mihos v. Swift</u>, 358 F.3d 91, 99 (1st Cir. 2004) ("When a motion to dismiss is based on the complaint, as it is here, the facts alleged in the complaint control.").

[19] <u>See</u> <u>Martis v. Grinnell Mut. Reinsurance Co.</u>, 905 N.E.2d 920, 924 (Ill. App. Ct. 2009); <u>James Family Charitable Found. v. State St. Bank & Trust Co.</u>, 956 N.E.2d 243, 246-48 (Mass. App. Ct. 2011).

[20] <u>Telford v. Iron World Mfg., LLC</u>, 680 F. Supp. 2d 337, 338 (D. Mass. 2010).

of Conflicts of Laws ("Restatement").[21] Feingold's allegations of deceptive statements sound

primarily in tort, and the general principles of Restatement § 145 apply. Restatement § 148 on

fraud and misrepresentation provides the most precise framework for Feingold's claim.[22] It lists

six factors for the court to consider:

> (a) the place, or places, where the plaintiff acted in reliance upon the defendant's
> representations,
> (b) the place where the plaintiff received the representations,
> (c) the place where the defendant made the representations,
> (d) the domicil, residence, nationality, place of incorporation and place of business
> of the parties,
> (e) the place where a tangible thing which is the subject of the transaction between
> the parties was situated at the time, and
> (f) the place where the plaintiff is to render performance under a contract which he
> has been induced to enter by the false representations of the defendant.[23]

Although John Hancock made the allegedly deceptive statements in Massachusetts, all

other relevant factors point to Illinois as having the most significant relationship to this case.

Feingold's mother lived in Illinois, purchased the policy in Illinois, and died in Illinois. Feingold

also resides in Illinois and received the allegedly deceptive statements in Illinois. He suffered any

loss from John Hancock's conduct in Illinois.[24] For these reasons, Illinois law governs any

---

[21] Bushkin Assocs., Inc. v. Raytheon Co., 473 N.E.2d 662, 668-70 (Mass. 1985).

[22] See In re Pharm Indus. Average Wholesale Price Litig., 230 F.R.D. 61, 82-83 (D. Mass. 2005); Faherty v. CVS Pharmacy, Inc., No. 09-CV-12102, 2011 WL 810178, at *5 (D. Mass. Mar. 9, 2011).

[23] Restatement (Second) of Conflicts of Laws § 148(2) (1971).

[24] See Bushkin Assocs., Inc., 473 N.E.2d at 672.

violation of consumer protection laws.[25] Consequently, Feingold's Massachusetts Chapter 93A claim must be dismissed.

Feingold argues in the alternative that he sufficiently stated a claim under the Illinois Consumer Fraud and Deceptive Business Practices Act. This argument fails as well. To state a claim, a plaintiff must plead, with the specificity required by Federal Rule of Civil Procedure 9(b), that: "(1) the defendant engaged in a deceptive act or practice, (2) with the intent that the plaintiff rely on the deception, (3) in the course of trade or commerce, and that (4) the deception was the proximate cause of the claimant's alleged injury."[26] To meet the requirements of Rule 9(b), the plaintiff must "state the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated."[27] Feingold, however, has failed to even mention the Illinois law. Furthermore, he has not stated the time or place of the alleged misrepresentations or the manner in which they were communicated. He has failed to properly allege a claim under the Illinois consumer protection law.

Even if he had properly raised this claim, Feingold would still fail on the merits. His argument depends on his assertion that John Hancock acted impermissibly in withholding payment

---

[25] See In re Pharm. Indus. Average Wholesale Price Litig., 230 F.R.D. at 82-83; Faherty, 2011 WL 810178, at *5.

[26] ABN AMRO, Inc. v. Capital Int'l Ltd., 595 F. Supp. 2d 805, 848-49 (N.D. Ill. 2008); Oliveira v. Amoco Oil Co., 776 N.E.2d 151, 160 (Ill. 2002).

[27] ABN AMRO, Inc., 595 F. Supp. 2d at 849.

until receiving proof of death. As explained above, this practice comports with both Massachusetts and Illinois law. Feingold has not alleged any unfair or deceptive conduct.[28]

> ii.   Unjust Enrichment

Feingold brings a claim for unjust enrichment, arguing that John Hancock used the unclaimed policy proceeds to make investments and generate income on its own behalf. He claims to have no adequate remedy at law because the insurance policy only governed the parties' conduct before the policy became payable.

Unjust enrichment requires a showing that: 1) the defendant received a benefit from the plaintiff; 2) the defendant appreciated or knew of the benefit; and 3) the defendant accepted or retained the benefit under unjust or inequitable circumstances.[29] Ordinarily, a plaintiff cannot bring an unjust enrichment claim where the parties' relationship is governed by a valid contract.[30] Nevertheless, at the pleading stage, "it is accepted practice to pursue both theories."[31]

The insurance policy purchased by Feingold's mother governs the relationship between

---

[28] The court also notes that Feingold has failed to allege that he sent John Hancock a demand letter pursuant to Chapter 93A § 9. Failure to do so is itself grounds for dismissing the claim. Rodi v. S. New. Eng. Sch. Law, 389 F.3d 5, 19 (1st Cir. 2004) (citing Entrialgo v. Twin City Dodge, Inc., 333 N.E.2d 202, 204 (Mass. 1975)).

[29] Vieira v. First Am. Title Ins. Co., 668 F. Supp. 2d 282, 294 (D. Mass. 2009); HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc., 545 N.E.2d 672, 679 (Ill. 1989) ("To state a cause of action based on a theory of unjust enrichment, a plaintiff must allege that the defendant has unjustly retained a benefit to the plaintiff's detriment, and that defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience.").

[30] Util. Audit, Inc. v. Horace Mann Serv. Corp., 383 F.3d 683, 688-89 (7th Cir. 2004); Metro. Life Ins. Co. v. Cotter, 984 N.E.2d 835, 849 (Mass. 2013).

[31] Lass v. Bank of Am., N.A., 695 F.3d 129, 140 (1st Cir. 2012).

Feingold and John Hancock.[32] But even if the court considered an unjust enrichment theory, Feingold would still fail to state a claim. He has not alleged any facts showing that John Hancock's actions violated "the fundamental principles of justice, equity, and good conscience."[33] Both the insurance policy and state law allowed John Hancock to hold the policy proceeds until Feingold provided proof of his mother's death. This adherence to the law cannot be considered unjust.

        iii.    <u>Conversion</u>

Feingold also brings a claim of conversion. Conversion requires that the defendant exercise dominion and control of over property belonging to the plaintiff to which the plaintiff had a right of possession.[34] As already explained, Feingold has not alleged anything to show a right to immediate ownership or possession of the policy proceeds. Accordingly, his claim for conversion must fail.[35]

---

[32] <u>See</u> <u>Util. Audit, Inc.</u>, 383 F.3d at 689 ("In determining whether a claim falls outside a contract, the subject matter of the contract governs, not whether the contract contains terms or provisions related to the claim.").

[33] <u>HPI Health Care Servs., Inc.</u>, 545 N.E.2d at 679; <u>see</u> <u>Vieira</u>, 668 F. Supp. 2d at 294.

[34] <u>Niemeyer v. Williams</u>, 910 F. Supp. 2d 1116, 1129 (C.D. Ill. 2012) ("To state a claim for conversion under Illinois law, a plaintiff must prove four elements: '(1) he has a right to the property; (2) he has an absolute and unconditional right to the immediate possession of the property; (3) he made a demand for possession; and (4) the defendant wrongfully and without authorization assumed control, dominion, or ownership over the property.' " (quoting <u>Cirrincione v. Johnson</u>, 703 N.E.2d 67, 70 (Ill. 1998))); <u>In re McCabe</u>, 345 B.R. 1, 8-9 (D. Mass. 2006) ("Under Massachusetts law, a defendant is liable for conversion where he 'intentionally or wrongfully exercise[d] acts of ownership, control, or dominion over personal property to which he has no right of possession at the time.' " (alteration in original) (quoting <u>Bleicken v. Stark</u>, 813 N.E.2d 572, 576 n.2 (Mass. App. Ct. 2004))).

[35] John Hancock raises several additional arguments in support of dismissal of this claim. Because the court determines that Feingold had no immediate right to possession, it need not

iv.     Breach of Fiduciary Duty

Feingold claims breach of fiduciary duty and makes several conclusory allegations as to

the source of that duty. Insurers, however, do not ordinarily owe a fiduciary duty to their

insureds.[36] Although special circumstances may sometimes create a fiduciary duty, Feingold has

not alleged the sort of reliance or continuing relationship of trust and confidence that would

suffice to create a special fiduciary duty.[37] Feingold's claim must fail.

v.     Declaratory Relief

Finally, Feingold seeks declaratory relief pursuant to 28 U.S.C. § 2201, which allows this

court to "declare the rights and other legal relations of any interested party seeking such

declaration."[38] District courts have considerable discretion in deciding whether to invoke this

---

address John Hancock's other arguments.

[36] Greenberger v. GEICO Gen. Ins. Co., 631 F.3d 392, 401 (7th Cir. 2011) ("In Illinois, '[i]t is well settled that no fiduciary relationship exists between an insurer and an insured as a matter of law.' " (quoting Fichtel v. Bd. of Dirs. of River Shore of Naperville Condo. Ass'n, 907 N.E.2d 903, 912 (Ill. App. Ct. 2009))); Thrivent Fin. for Lutherans v. Strojny, 882 F. Supp. 2d 260, 267 (D. Mass. 2012) ("Relationships between an insurance company and an insured are not typically understood to be fiduciary in nature, and an insurer, therefore, does not owe its insured a fiduciary duty 'absent special circumstances of assertion, representation and reliance.' " (internal quotation marks omitted)); Szymanski v. Bos. Mut. Life Ins. Co., 778 N.E.2d 16, 27-28 (Mass. App. Ct. 2002).

[37] Greenberger, 631 F.3d at 401 ("The plaintiff has the burden to plead with specificity and prove by clear and convincing evidence the existence of a fiduciary or special relationship."); Thrivent Fin. for Lutherans, 882 F. Supp. 2d at 267 ("Typically, courts find that there is a fiduciary duty where the facts of the case present a special circumstance, such as a continuing relationship between the agent and the insured, or where there is reliance by the insured on the insurer's agent for advice and guidance on the insured's policies.").

[38] 28 U.S.C. § 2201.

remedy.[39] This court has already determined that Feingold's other claims lack merit. His requested declarations, like his other claims, seek relief counter to established law. Accordingly, Feingold's request for declaratory relief is dismissed.

IV.    Conclusion

     For the reasons given above, John Hancock's Motion to Dismiss [#9] is ALLOWED.

AN ORDER HAS ISSUED.

                                    /s/ Joseph L. Tauro
                                  United States District Judge

---

[39] Wilton v. Seven Falls Co., 515 U.S. 277, 287 (1995); Rossi v. Gemma, 489 F.3d 26, 39 (1st Cir. 2007).