# United States Court of Appeals
## For the First Circuit

---

No. 13-2151

RICHARD FEINGOLD, individually and as a representative of a class
of similarly situated persons,

Plaintiff, Appellant,

v.

JOHN HANCOCK LIFE INSURANCE COMPANY (USA);
JOHN HANCOCK LIFE & HEALTH INSURANCE COMPANY,

Defendants, Appellees.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Joseph L. Tauro, U.S. District Judge]

---

Before

Lynch, Chief Judge,
Selya and Kayatta, Circuit Judges.

---

Glenn L. Hara, with whom David M. Oppenheim, George K. Lang, and Anderson + Wanca were on brief, for appellant.
Edwin G. Schallert, with whom Susan R. Gittes, Debevoise & Plimpton LLP, Myles W. McDonough, Ryan B. MacDonald, and Sloane and Walsh LLP were on brief, for appellees.

---

May 27, 2014

---

**LYNCH, Chief Judge**. Richard Feingold sued John Hancock Life Insurance Company and John Hancock Life & Health Insurance Company (collectively, "Hancock") in a putative class action for damages said to arise from Hancock's adherence to contractual terms requiring that Hancock be given notice of the death of its insureds before death benefits are paid out to beneficiaries. Specifically, Hancock is said to have an obligation, stemming from a regulatory agreement between Hancock and several states, to discover such deaths and notify beneficiaries. The district court dismissed the complaint for failure to state a claim. Feingold v. John Hancock Life Ins. Co., Civ. No. 13-10185-JLT, 2013 WL 4495126, at *1 (D. Mass. Aug. 19, 2013).

On appeal, Feingold primarily argues that the agreement Hancock entered with several state governments in June 2011 regarding its handling of unclaimed insurance policy proceeds imposed new obligations on Hancock as to beneficiaries of its insureds under state law. We disagree and so affirm.

I.

A. Facts

We recite the facts as alleged in Feingold's complaint and also consider documents that Feingold has attached to the complaint. Yacubian v. United States, ___ F.3d ___, 2014 WL 1688918, at *1 (1st Cir. Apr. 30, 2014); see Fed. R. Civ. P. 10(c).

-2-

In approximately 1945, Feingold's mother, Mollie Feingold, purchased a life insurance policy from Hancock. Feingold did not know that his mother had purchased this policy, which named only his late father as a beneficiary. She died on or about December 19, 2006.

Feingold first became aware that Hancock owed his mother a different type of payment as a policyholder of a mutual insurance company in late 2010, when he visited an Illinois Treasury website, called "Cash Dash," listing unclaimed property.[1] He was informed that Hancock owed his mother $459 as a demutualization proceeds dividend, which he received from Illinois in December 2011. The payment resulted from the demutualization of Hancock in 1999-2000. Under Illinois law, if those funds had remained unclaimed, they would be escheated to the state two years after the date of demutualization. 765 Ill. Comp. Stat. 1025/3a(a)(1).

In January 2012, Feingold informed Hancock of his mother's death and requested a copy of her life insurance policy. He said he wanted information regarding the unclaimed dividend payment he had recovered and information as to whether any life insurance proceeds were due. Hancock initially told him that his mother had not purchased a policy, but shortly thereafter Hancock

---

[1] The Illinois State Treasurer renamed Illinois's "Cash Dash" unclaimed property program to "I-Cash" in 2012. Melissa Hahn, News Release, Illinois State Treasurer (July 9, 2012), http://icash.illinois.gov/pdf/i-cash%20relaunch%20press%20release%20final.pdf.

-3-

said it had found his mother's policy.  Hancock sent Feingold the forms he needed to make a death benefit claim but did not provide any other information.

After Feingold had completed and submitted Hancock's forms, he continued to ask Hancock for a copy of his mother's policy, including a written request for the policy.  On June 1, 2012, Hancock issued Feingold a check for $1,349.71 for death benefits but did not provide a copy of Mollie Feingold's life insurance policy.

B.    Global Resolution Agreement

Several states conducted an audit of Hancock's handling of "unclaimed property," which includes life insurance proceeds that have not been claimed by beneficiaries.  These states have unclaimed property laws under which insurance companies are sometimes required to report and remit unclaimed insurance proceeds to the state.  The criteria governing if and when unclaimed property must escheat to the state vary from state to state.  As a result of this audit, Hancock entered into a Global Resolution Agreement ("GRA") with Illinois and other states in June 2011 to alter its procedures for handling unclaimed property.  Feingold attached the GRA to the complaint.

The express purpose of the GRA is to "set[] forth the terms and conditions intended to resolve the on-going unclaimed property audit" of Hancock that Verus Financial LLC was conducting

on behalf of participating states. Hancock entered the GRA to resolve disputes about its obligations under participating states' unclaimed property laws. The GRA says that Hancock denies having violated any of those laws.

The GRA outlined a process for Hancock to make payments to participating states based on the results of the unclaimed property audit. Hancock also agreed to adjust some of its business practices under the GRA. Neither Feingold nor the other members of the putative class are parties or signatories to that agreement. In response to Hancock's motion to dismiss, Feingold argued that the GRA was the source of Hancock's liability.

C.      Procedural History

Feingold filed the Class Action Complaint on January 30, 2013, alleging that Hancock owed Feingold and the putative class of similarly situated beneficiaries damages based on its handling of unclaimed benefits under its life insurance policies. The complaint asserted several causes of action, including conversion, unjust enrichment, violation of consumer protection laws, and breach of fiduciary duty.

On February 26, 2013, Hancock moved to dismiss the complaint under Fed. R. Civ. P. 12(b)(6). Attached to the motion was a copy of Mollie Feingold's application for a life insurance policy, which Hancock had retained. The application, dated March

28, 1945, listed Jack Feingold, identified as Mollie Feingold's husband, as the only beneficiary.

Hancock also explained that it did not retain a copy of Mollie Feingold's actual insurance policy because industry practice in 1945 was to keep only "a copy of the policy form reflecting the terms and conditions of the individual's coverage." As a result, Hancock attached what it believed to be a copy of Mollie Feingold's applicable policy form to the motion to dismiss.

In opposing the motion, Feingold explained that his common law claims were based on duties Hancock had incurred under the GRA, specifically the GRA's requirement that Hancock examine the Social Security Administration's Death Master File ("DMF"), a public database containing death notices. Feingold argued that had Hancock examined the DMF as required under the GRA, it would have learned that Mollie Feingold had died in 2006 and escheated the unclaimed death benefit under her policy to the state of Illinois. Although Feingold argued that a breach of the GRA supported his claim for common law damages, the complaint did not assert a separate breach-of-contract claim.

The district court held a hearing on July 25, 2013 and issued a memorandum and order granting Hancock's motion to dismiss on August 19, 2013. The court applied both Massachusetts and Illinois law to Feingold's claims because it concluded that the relevant laws of both states were the same and so it did not need

to resolve the choice of law issue.[2]  Feingold, 2013 WL 4495126, at *2.

The district court rejected Feingold's theory of liability based on an alleged violation of the GRA, explaining that the GRA was a contract only between Hancock and participating states.  The district court concluded that Feingold could not enforce a contract to which he was not a party and "nothing suggests that [the parties to the contract] intended Feingold as a third party beneficiary."  Id.

The district court also considered the life insurance policy form that Hancock said Mollie Feingold had likely purchased, because Feingold did not dispute its authenticity and the policy was central to his claims.  Id.; see Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993) (explaining narrow exception in which district court can consider documents outside of a complaint on a motion to dismiss without converting the motion to one for summary judgment if their authenticity is not disputed, they are central to plaintiffs' claims, or they are "sufficiently referred to in the complaint"); Alt. Energy, Inc. v. St. Paul Fire & Marine Ins. Co., 267 F.3d 30, 33 (1st Cir. 2001) (same).  The policy requires a beneficiary to provide proof of the policyholder's death before

---

[2] The district court said Hancock had argued that Illinois law should control.  Feingold's complaint, in contrast, treated Massachusetts law as governing, but Feingold cited mostly Illinois cases in opposing Hancock's motion to dismiss.  Feingold, 2013 WL 4495126, at *2.

Hancock will pay the death benefit. Feingold, 2013 WL 4495126, at *2.

The district court reasoned that Feingold had not stated an unjust enrichment or conversion claim where Hancock's practice of waiting for proof of death before paying policy proceeds was consistent with both Illinois and Massachusetts law and complied with the insurance contract. See id. at *4. The court also dismissed Feingold's breach of fiduciary duty claim because Feingold had not alleged a relationship of trust or the sort of reliance that made Hancock a plausible fiduciary. Id. This appeal followed.[3]

II.

We review de novo a district court's dismissal of a complaint under Fed. R. Civ. P. 12(b)(6), García-Catalán v. United States, 734 F.3d 100, 102 (1st Cir. 2013), accepting all well-pleaded facts alleged in the complaint as true and drawing reasonable inferences in Feingold's favor, Rodríguez-Reyes v. Molina-Rodríguez, 711 F.3d 49, 52-53 (1st Cir. 2013). The complaint "must contain sufficient factual matter to state a claim to relief that is plausible on its face." Id. at 53 (quoting Grajales v. P.R. Ports Auth., 682 F.3d 40, 44 (1st Cir. 2012)) (internal quotation marks omitted). "Dismissal for failure to

---

[3] Feingold does not appeal from the district court's dismissal of his claims under consumer protection statutes or his request for declaratory relief.

state a claim is appropriate 'if the complaint does not set forth factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory.'" Lemelson v. U.S. Bank Nat'l Ass'n, 721 F.3d 18, 21 (1st Cir. 2013) (quoting United States ex rel. Hutcheson v. Blackstone Med., Inc., 647 F.3d 377, 384 (1st Cir. 2011)).

We apply Illinois law, as the parties agree on appeal that Illinois law governs Feingold's common law claims in this diversity suit. See Lluberes v. Uncommon Prods., LLC, 663 F.3d 6, 23 (1st Cir. 2011) (applying substantive law agreed upon by the parties in diversity suit).

A.    Feingold Fails to State a Plausible Claim Based on an Alleged Breach of the GRA

On appeal, Feingold challenges the district court's refusal to consider the GRA in assessing the plausibility of his claims for unjust enrichment, conversion, and breach of fiduciary duty. He argues that Hancock breached the GRA and that this breach makes his common law claims plausible because he is a third-party beneficiary to the GRA. He also argues, in the alternative, that Hancock's breach of the GRA supports his common law claims even if he is not a GRA third-party beneficiary. These arguments fail because Feingold is not a third-party beneficiary to the GRA, and so Hancock owes Feingold no enforceable duties under that agreement.

-9-

It is undisputed that Feingold is not a party to the GRA, a contract between Hancock and several state governments. So, under Illinois law, Feingold has authority to enforce the terms of the GRA only if he is a third-party beneficiary of that contract. Lake Cnty. Grading Co. v. Vill. of Antioch, 985 N.E.2d 638, 644 (Ill. App. Ct. 2013), appeal allowed, 996 N.E.2d 14 (Ill. 2013). Under Illinois law, "[t]here is a strong presumption that the parties to a contract intend that the contract's provisions apply only to them, and not to third parties." Id. (emphasis added) (quoting Martis v. Grinnell Mut. Reins. Co., 905 N.E.2d 920, 924 (Ill. App. Ct. 2009)) (internal quotation marks omitted). Only explicit language in the contract can overcome this strong presumption against third-party beneficiaries. See id. "The contract language must show that the contract was made for the direct, not merely incidental, benefit of the third party." Id.

Here, there is no such language in the GRA that could overcome this strong presumption. The GRA's express purpose is to resolve disputes related to state governments' ongoing audit of Hancock's handling of unclaimed property. There is no indication that the GRA was intended directly to benefit anyone other than the signatory states negotiating Hancock's obligations with respect to their unclaimed property programs.

Feingold points only to Hancock's assertion in the GRA that it has acted in its policyholders' best interest, as well as

-10-

Hancock's obligation under the GRA to attempt to locate life insurance beneficiaries before escheating unclaimed policy proceeds to a state. Otherwise, Feingold does not rely on contract language, as required under Illinois law; rather, he says he is a third-party beneficiary because the states' unclaimed property programs at issue in the GRA are themselves intended to help insurance policy beneficiaries, like himself, locate unclaimed property.

At most, Feingold is an incidental, as opposed to direct, beneficiary of the GRA. This is particularly so given that the GRA is a contract with state governments. The general contract principle, espoused by the Restatement (Second) of Contracts and recognized under Illinois law, is that beneficiaries of a government contract are "assumed to be merely incidental beneficiaries, and may not enforce the contract absent clear intent to the contrary." Bergman v. Water Reclamation Dist. of Greater Chi., 654 N.E.2d 606, 608 (Ill. App. Ct. 1995); accord Restatement (Second) of Contracts § 313 (1981). This rule reflects that "[g]overnment contracts often benefit the public, but individual members of the public are treated as incidental beneficiaries unless a different intention is manifested." Restatement (Second) of Contracts § 313 cmt. a. In other words, "[t]he distinction between an intention to benefit a third party and an intention that the third party should have the right to enforce that intention is

-11-

emphasized where the promisee is a governmental entity." 8 Murray, Corbin on Contracts § 45.6 (rev. ed. 2007). So, as a matter of law, Feingold is not a third-party beneficiary to the GRA.[4]

Feingold cannot circumvent the strong presumption against third-party beneficiaries in Illinois law and the Restatement by recasting an alleged violation of the GRA as a common law claim. Feingold has not pointed to any Illinois cases where a plaintiff has asserted a claim of unjust enrichment, conversion, or breach of fiduciary duty based solely on a contract that the plaintiff lacks authority to enforce.[5]

Hancock paid the death benefit to Feingold on June 1, 2012, shortly after it had received the proof of death that was

---

[4] Feingold argues he must show only that it is plausible that insurance policy beneficiaries are third-party beneficiaries of the GRA on a motion to dismiss. This argument misapprehends the plausibility standard. Whether Feingold is a third-party beneficiary to the GRA is a question of law resolved by contract interpretation -- even at this early stage in the proceedings. Feingold does not point to any facts alleged in the complaint that impact this legal question. See MacKenzie v. Flagstar Bank, FSB, 738 F.3d 486, 491-92 (1st Cir. 2013) (affirming Rule 12(b)(6) dismissal of plaintiffs' complaint where, as a matter of law, plaintiffs were not third-party beneficiaries to a government contract they sought to enforce).

[5] Feingold's reliance on Raintree Homes, Inc. v. Village of Long Grove, 807 N.E.2d 439 (Ill. 2004), is misplaced. That case addressed a different question of whether an action seeking declaratory judgment and restitution was time-barred under Illinois's Tort Immunity Act. Id. at 447. The case is also distinguishable because the plaintiffs there alleged violations of both statutory and constitutional law. Id. at 442. Unlike this case, the Raintree Homes plaintiffs did not base their claim on an alleged violation of a government contract.

-12-

required under Mollie Feingold's policy.[6]  That proof-of-death notice requirement complies with Illinois law.  See 215 Ill. Comp. Stat. 5/154.6(i) (saying insurer commits an improper claims practice if it fails to affirm or deny coverage "after proof of loss statements have been completed" (emphasis added)); Am. Country Ins. Co. v. Bruhn, 682 N.E.2d 366, 370 (Ill. App. Ct. 1997) (saying that insured's duty to provide insurer with notice of a claim is a "reasonable requirement in an insurance policy").  It is also in accord with Illinois's unclaimed property statute, which acknowledges that life insurance proceeds are not payable without proof of death.  See 765 Ill. Comp. Stat. 1025/3(b).

B.      Feingold's Other Arguments Are Waived and Do Not Give Rise to a Claim under Illinois Law

Feingold has made inconsistent arguments on appeal. Perhaps recognizing that Feingold has no enforceable rights under the GRA, Feingold's attorney attempted to change course at oral argument and argued for the first time that Feingold had alleged a violation of Illinois's unclaimed property statute, 765 Ill. Comp.

---

[6] Feingold has not identified any source outside of the GRA, whether it be a statute or common law, that requires Hancock proactively to search public death records for policyholders' names rather than wait for submission of proof of death in accordance with its insurance policy provisions.
   On appeal, Hancock asserts that it was the first insurance company to agree to consult the DMF in a regulatory agreement. Hancock says that some states, but not Illinois, have enacted statutes requiring insurance companies to search the DMF, but that these statutes were passed after Hancock had already agreed to do so in the GRA in June 2011.

Stat. 1025/3, that was wholly independent of the GRA. Illinois's Unclaimed Property Act governs when insurance companies must remit "unclaimed funds" to the state of Illinois. Id. While the parties offer different interpretations of the statute, we need not resolve that question of Illinois law because Feingold's new argument does not help him for at least two reasons.

First, the argument, not raised in Feingold's initial brief, is waived. See United States v. Sacko, 247 F.3d 21, 24 (1st Cir. 2001). Second, Feingold asserts that Hancock violated Illinois's Unclaimed Property Act if it knew that Mollie Feingold had died in 2006 but failed to escheat her policy proceeds to the state. Even assuming Feingold is correct that Hancock's knowledge of Mollie Feingold's death would have triggered its duty to remit policy proceeds to Illinois, the complaint does not allege that Hancock had knowledge of Mollie Feingold's death.

In addition, the payment of $459 was unrelated to any death benefit under Mollie Feingold's insurance policy. Feingold acknowledges that the $459 amount constituted demutualization proceeds from Hancock's conversion to a publicly-owned company in 1999 and 2000. A different provision of Illinois's Unclaimed Property Act required Hancock to escheat those funds if they remained unclaimed for more than two years after the date of demutualization. 765 Ill. Comp. Stat. 1025/3a(a)(1). That provision did not require Hancock to search the DMF as is required

-14-

in the GRA.  Id.  Hancock's compliance with a different section of the Unclaimed Property Act based on an event unrelated to Mollie Feingold's death does not state a plausible violation of Illinois law.

## III.

For the reasons stated, we affirm.